Opinion
 

 KREMER, P. J.
 

 Defendants City of San Diego and Michael T. Uberuaga (together San Diego) appeal a judgment granting the petition of plaintiffs Charles Davis, James W. Jones, Danny Orduno, Michael Shiraishi, Cesar
 
 *896
 
 Solis and San Diego Police Officers Association (together Association) for a writ of mandate directing San Diego to refrain from releasing to the public certain reports of its Citizens’ Review Board on Police Practices (Board). (Code Civ. Proc., § 1085.) San Diego contends the court erred in concluding Board reports constituted confidential personnel records under relevant statutes. (Pen. Code, §§ 832.5, 832.7, 832.8.)
 
 [1]
 
 San Diego further contends that even if Board reports constituted confidential personnel records, the court should have concluded San Diego could nonetheless voluntarily release those reports to the public.
 

 San Diego also appeals a postjudgment order awarding attorney fees to Association. San Diego contends the court abused its discretion in assertedly not requiring Association to make a sufficient evidentiary showing that its counsel’s hourly fee was reasonable.
 

 We have consolidated San Diego’s two appeals. Since on this record San Diego has not established any reversible judicial error, the judgment granting plaintiffs’ petition for writ of mandate and the order awarding attorney fees will not be disturbed.
 

 I
 

 Factual and Procedural Background
 

 In February 2000, as peace officers employed by the City of San Diego Police Department (Department), the individual plaintiffs allegedly participated in or perceived the shooting death of William Miller. After investigating the Miller shooting, the Department found all officers had acted within Department policy. Similarly, the investigation by the San Diego County District Attorney’s Office determined the shooting was lawful. The Board reviews citizen complaints, all police shootings resulting in human death or injury, and all in-custody deaths.
 
 [2]
 
 In reviewing the Miller shooting, the Board considered various documents, including the Department’s internal affairs investigation report, the report of the Department’s shooting review
 
 *897
 
 board, and the Department’s homicide report.
 
 [3]
 
 The Board prepared a written report of its conclusions in a narrative form understandable to the public.
 
 [4]
 
 The Board’s final reports are provided to the city manager and San Diego’s police chief. (San Diego City Charter, art. V, § 43(d); Board’s Procedures, § 3.8 (T)(2).)
 
 [5]
 

 In July 2001 City Manager Uberuaga told Association—the recognized employee bargaining unit for sworn San Diego police officers—that he would exercise discretion to release Board’s narrative reports to the public under the following policy: “Summary Reports of Findings, Recommendations and Comments forwarded to me by the Citizens Review Board in all police shootings involving death or injury and all in-custody deaths will be released to the public.” Uberuaga also told Association he intended specifically to release to the public the Board’s report on the Miller shooting.
 

 Plaintiffs objected to public disclosure of the Board’s narrative reports. Thus, in September 2001, seeking to prevent public release of the Board’s narrative report on the Miller shooting, plaintiffs petitioned for writ of mandate. Plaintiffs’ petition alleged public release of the Board report on the Miller shooting would constitute unlawful disclosure of a personnel record. (§§ 832.5, 832.7, 832.8.)
 

 After hearing, the superior court granted plaintiffs’ petition for writ of mandate. In doing so, the court stated: San Diego was prohibited from disclosing to the public the Board’s report about the Miller shooting; Penal Code section 832.7 made the report confidential; and Evidence Code section 1043 et seq. prohibited dissemination of the report except under certain
 
 *898
 
 circumstances in litigation discovery. The court issued a writ mandating San Diego to (1) preserve and maintain the confidentiality of the Board’s summary reports of findings, recommendations and comments; and (2) refrain from releasing those reports to the public. In January 2002, the court awarded Association $10,620 attorney fees.
 

 On San Diego’s appeal, we conclude the Board reports constituted confidential personnel records under relevant statutes. We also conclude San Diego was statutorily precluded from voluntarily disclosing those reports to the public. Further, we conclude the amount of the attorney fee award to Association was proper.
 

 II
 

 Discussion
 

 A
 

 Court Properly Granted Plaintiffs ’ Petition for Writ of Mandate
 

 1
 

 Board’s Narrative Reports Were Confidential Personnel Records
 

 San Diego contends the court should have found that the Board’s narrative reports did not constitute confidential personnel records and could thus properly be released to the public by San Diego. However, as we shall explain, San Diego was statutorily precluded from making public disclosure of the Board’s narrative reports since those reports came within the statutory definition of confidential personnel records.
 

 At relevant times, section 832.7, subdivision (a) provided: “Peace officer personnel records and records maintained by any state or local agency pursuant to Section 832.5,[
 
 6
 
 ] or information obtained from these records, are confidential and shall not be disclosed by the department or agency that employs the peace officer in any criminal or civil proceeding
 
 *899
 
 except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code. This section shall not apply to investigations or proceedings concerning the conduct of police officers or a police agency conducted by a grand jury, a district attorney’s office, or the Attorney General’s office.”
 

 Section 832.8 provides: “As used in Section 832.7, ‘personnel records’ means any file maintained under that individual’s name by his or her employing agency and containing records relating to any of the following: [1f] (a) Personal data, including marital status, family members, education and employment history, home addresses, or similar information. [|] (b) Medical history, [f] (c) Election of employee benefits. [|] (d) Employee advancement, appraisal, or discipline, ffl] (e) Complaints, or investigations of complaints, concerning an event or transaction in which he or she participated, or which he or she perceived, and pertaining to the manner in which he or she performed his or her duties, [^f] (f) Any other information the disclosure of which would constitute an unwarranted invasion of personal privacy.”
 

 In sum, as characterized by the Supreme Court, sections 832.7 and 832.8 “ ‘define “personnel records” [citation] and provide that such records are “confidential” and subject to discovery only pursuant to the procedures set forth in the Evidence Code.’ ”
 
 (City of Los Angeles
 
 v.
 
 Superior Court
 
 (2002) 29 Cal.4th 1, 9 [124 Cal.Rptr.2d 202, 52 P.3d 129].) Asserting the Board’s narrative reports and the reports used in their preparation did not come within section 832.8’s definition of personnel records as not maintained in files under the names of individual officers, San Diego contends none of those reports constituted a confidential personnel record under section 832.7.
 

 In support of its theory that the Board’s narrative reports were not personnel records under the definition of section 832.8 because they were not maintained in files under the individual officers’ names, San Diego presented evidence that (1) traditional Board reports for citizen complaints were maintained not under the individual officers’ names but instead by the date of review and, within each date, by the internal affairs number; (2) the Board’s narrative reports about police shootings and in-custody deaths were maintained not in individual officers’ names but instead in the names of the deceased; (3) in those narrative reports, no individual officer identification was used; and (4) the Board had no system to do a cross-reference of case numbers with officers’ names.
 

 In support of its theory that the reports used in the preparation of the Board’s narrative reports were not personnel records under the definition of
 
 *900
 
 section 832.8 because they were not maintained in files under the individual officers’ names, San Diego presented evidence that (1) the Department’s internal affairs reports were maintained under specific case numbers not corresponding to any individual officer; (2) the Department’s shooting review board’s reports attached to its internal affairs reports were maintained by internal affairs case numbers; (3) the Department’s homicide reports were maintained by reference numbers and the names of the deceased; and (4) those Department documents did not contain personal information about the officers involved in a specific shooting or disclose information about potential or actual discipline of the officers whether past, present or contemplated.
 

 However, reasonably read in its entirety, section 832.8 defines as a personnel record any report naming an individual officer and relating to a complaint or investigation of complaint about an event the named officer participated in or perceived and that concerned the manner of the officer’s performance of duty. San Diego’s proffered interpretation of section 832.8’s phrase “any file maintained under that individual’s name” is unreasonably narrow as essentially focusing simply on the caption identifying a file or record. (Cf.
 
 Miller v. Chico Unified School Dist.
 
 (1979) 24 Cal.3d 703, 706, 712-713 [157 Cal.Rptr. 72, 597 P.2d 475]
 
 (Miller);
 

 [7]
 

 Aguilar v. Johnson
 
 (1988) 202 Cal.App.3d 241, 251 [247 Cal.Rptr. 909];
 
 San Francisco, supra, 202
 
 Cal.App.3d at p. 192.) Further, the evidence presented by San Diego demonstrated at most that the names of individual officers did not appear in the captions identifying the Board reports and the reports used in their preparation. San Diego presented no evidence establishing that individual officers’ names did not appear elsewhere in those documents.
 

 In sum, as containing records relating to complaints or investigations of complaints about an event the officers participated in or perceived and that pertained to the manner of the officers’ performance of their duties, the Department’s internal affairs reports and its attached shooting review board reports constituted personnel records under section 832.8, subdivision (e). Indeed, San Diego expressly acknowledges section 832.8, subdivision (e) provides that both a complaint against an officer and the investigation of the complaint are “considered part of an officer’s personnel file.” Thus, as containing information obtained from those personnel records, the Board’s
 
 *901
 
 narrative reports were confidential under section 832.7, subdivision (a). Further, to the extent the Department’s internal affairs reports and its shooting review board reports were retained and maintained as complaints and reports or findings relating to those complaints (§ 832.5, subd. (b)), the Board’s narrative reports containing information from those Department reports were also confidential under section 832.7, subdivision (a). (Cf.
 
 San Francisco, supra,
 
 202 Cal.App.3d at p. 192 [disallowing under §§ 832.5 and 832.7 the disclosure of recommendation of director of police commission’s office of citizen complaints].)
 

 Accordingly, the Board’s narrative report about the Miller shooting constituted a confidential personnel record of the individual plaintiff officers.
 

 2
 

 San Diego Could Not Voluntarily Disclose Board’s Narrative Reports
 

 Nevertheless, San Diego contends that even if the Board’s narrative report on the Miller shooting constituted a confidential personnel record of the individual plaintiffs, San Diego could properly make a voluntary disclosure of the report to the public. San Diego also contends that Uberuaga as its city manager had discretion to release the Board report to the public voluntarily even if the report were not requested in connection with a civil or criminal proceeding. Further, San Diego concludes Uberuaga properly exercised his discretion in determining that improved police-community relations warranted release of the Board report to the public.
 

 In essence, relying on
 
 Bradshaw v. City of Los Angeles
 
 (1990) 221 Cal.App.3d 908, 921 [270 Cal.Rptr. 711]
 
 (Bradshaw),
 
 San Diego contends that even if the Board’s narrative report on the Miller shooting constituted a personnel record, the report was assertedly confidential only in civil or criminal proceedings, a situation not present here. However, in
 
 San Diego Police Officers Assn.
 
 v.
 
 City of San Diego Civil Service Com.
 
 (2003) 104 Cal.App.4th 275 [128 Cal.Rptr.2d 248]
 
 (San Diego),
 
 we rejected a contention similar to the one made by San Diego here.
 

 In
 
 San Diego, supra,
 
 104 Cal.App.4th at page 282, we observed that in
 
 Bradshaw, supra,
 
 221 Cal.App.3d at page 916, “the court interpreted section 832.7 to mean that the statute did not apply to preclude a public entity from disclosing peace officer personnel records unless those records were sought in connection with a civil or criminal proceeding.” We also observed: “Two California appellate courts have since disagreed with Bradshaw’s expansive pronouncement that section 832.7’s disclosure prohibition applies only to
 
 *902
 
 disclosures in criminal or civil actions, and instead interpreted section 832.7 as recognizing broad confidentiality protection for peace officer personnel records regardless of the context in which the documents are sought.”
 
 (San Diego,
 
 at p. 283, citing
 
 City of Hemet v. Superior Court
 
 (1995) 37 Cal.App.4th 1411 [44 Cal.Rptr.2d 532]
 
 (City of Hemet); City of Richmond v. Superior Court
 
 (1995) 32 Cal.App.4th 1430 [38 Cal.Rptr.2d 632]
 
 (City of Richmond);
 
 see also
 
 County of Los Angeles v. Superior Court
 
 (1993) 18 Cal.App.4th 588, 599-600 [22 Cal.Rptr.2d 409].) We stated that
 
 City of Hemet
 
 and
 
 City of Richmond
 
 “correctly interpreted section 832.7, and that
 
 Bradshaw’s
 
 holding that section 832.7 applies only to civil and criminal proceedings is unsupported.”
 
 (San Diego,
 
 at p. 284, citing
 
 Dibb, supra,
 
 8 Cal.4th at p. 1210, fn. 5 [in context of local commission’s citizen complaint investigations, § 832.7 “imposes on the sheriff the duty to maintain the confidentiality of peace officer personnel records or information obtained from those records”].) Further, we agreed with
 
 City of Richmond
 
 that “section 832.7’s statutory language demonstrates that the Legislature was intending to recognize the confidentiality of peace officer personnel records regardless of the context in which the records were sought.”
 
 (San Diego,
 
 at pp. 284-285.) In sum, we “concluded that the correct interpretation of the statute is that the Legislature intended to establish that personnel records are confidential and then created a limited exception in the civil/criminal discovery context.”
 
 (Id.
 
 at p. 287, citing
 
 Hackett v. Superior Court
 
 (1993) 13 Cal.App.4th 96, 100 [16 Cal.Rptr.2d 405] [“Although it is clear the [statute] was conceived as a legislative response to Pitchess[
 
 8
 
 ] . . . , it is equally clear from its plain language [that the statute] was intended to create a privilege for
 
 all
 
 information in peace officers’ personnel files”].)
 

 In sum, even though the Board’s narrative report on the Miller shooting was not requested in discovery in a civil or criminal proceeding, the report constituted a confidential personnel record of the individual plaintiff officers. As such, San Diego could not properly make a voluntary public disclosure of that report. Hence, the judgment favoring plaintiffs must be upheld.
 

 B
 

 Amount of Attorney Fees Awarded Was Proper
 

 The court awarded Association $10,620 attorney fees under Code of Civil Procedure section 1021.5.
 
 [9]
 
 San Diego contends the superior court abused its discretion in not requiring Association to prove the reasonableness
 

 
 *903
 
 of its counsel’s hourly fee. Specifically, citing
 
 Blum v. Stenson
 
 (1984) 465 U.S. 886, 895-896, footnote 11 [104 S.Ct. 1541, 1547, 79 L.Ed.2d 891]
 
 (Blum),
 
 San Diego asserts the court should have required Association to present evidence beyond its counsel’s declaration sufficient to show its “requested rates” were “in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.” However, San Diego has not demonstrated the court abused its discretion with respect to the amount of the attorney fee award.
 

 Blum, supra,
 
 465 U.S. 886, relied upon by San Diego, is not controlling here since
 
 Blum
 
 involved judicial interpretations of federal statutory law not at issue in this case.
 
 (Downey Cares
 
 v.
 
 Downey Community Development Com.
 
 (1987) 196 Cal.App.3d 983, 995-996 [242 Cal.Rptr. 272].) Instead, “the method already well established in a large body of California precedent construing” Code of Civil Procedure section 1021.5 applies here.
 
 (Downey,
 
 at p. 996.) Thus, when a party is entitled to attorney fees under Code of Civil Procedure section 1021.5, the amount of the award is determined by the trial court under guidelines established by the California Supreme Court.
 
 (Press v. Lucky Stores, Inc.
 
 (1983) 34 Cal.3d 311, 321-322 [193 Cal.Rptr. 900, 667 P.2d 704]
 
 (Press))
 

 The California Supreme Court has stated a trial court must “determine a ‘touchstone’ or ‘lodestar’ figure based on a ‘careful compilation of the time spent and reasonable hourly compensation for each attorney . . . involved in the presentation of the case.’”
 
 (Press, supra,
 
 34 Cal.3d. at p. 322.) “The proper determination of the use of the lodestar figure is extremely important” because “ ‘ “[t]he starting point of every fee award . . . must be a calculation of the attorney’s services in terms of the time he has expended on the case. Anchoring the analysis to this concept is the only way of approaching the problem that can claim objectivity . . .
 
 (Ibid.)
 
 “Ultimately, the trial judge has discretion to determine ‘the value of professional services rendered in his [or her] court . . . .’ [Citation.] However, since determination of the lodestar figures is so ‘[fundamental’ to calculating the amount of the award, the exercise of that discretion must be based on the lodestar adjustment method.”
 
 {Ibid.)
 
 In sum, “California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys’ fee award.”
 
 (Margolin v. Regional Planning Com.
 
 (1982) 134 Cal.App.3d 999, 1004 [185 Cal.Rptr. 145]
 
 (Margolin))
 

 
 *904
 
 Association moved for an attorney fee award of $10,620 based upon 47.2 hours of attorney time spent on this case at $225 per hour. Association submitted evidence that its counsel had ample experience in cases involving law enforcement officers acting in the course and scope of their official duties; Association’s counsel was one of a few California attorneys with practices concentrated in that field of law; and counsel’s $225 hourly rate had been determined to be reasonable in other matters.
 
 (Press, supra,
 
 34 Cal.3d. at p. 322;
 
 Margolin, supra,
 
 134 Cal.App.3d at p. 1004.) San Diego presented no evidence to the contrary. Since on this record the court acted within its discretion in concluding an award of attorney fees to Association in the amount of $10,620 was reasonable, the order granting those fees must be upheld.
 

 Ill
 

 Disposition
 

 The judgment and order are affirmed.
 

 Benke, J., and O’Rourke, J., concurred.
 

 [1]
 

 All further statutory references are to the Penal Code unless otherwise specified.
 

 [2]
 

 San Diego City Charter, article V, section 43(d) provides in relevant part: “Notwithstanding any other provision of this Charter, the City Manager shall have the exclusive authority to create and establish a citizens’ review board on police practices to review and evaluate citizens’ complaints against members of the San Diego Police Department and the San Diego Police Department’s administration of discipline arising from such complaints.”
 

 The Citizens’ Review Board on Police Practices Policies and Procedures, revised May 26, 1998 (hereafter Board’s Procedures), at section 1, provides in relevant part: “The Citizens’ Review Board on Police Practices shall review and evaluate serious complaints brought by the public against the Police Department of the City of San Diego. Further, the Board shall review, whether or not a complaint has been filed, all police actions that result in the death of
 
 *897
 
 a person. The Board shall also review and evaluate the administration of discipline arising from complaints.”
 

 [3]
 

 In reviewing a police shooting, the Board is also given a document from the district attorney’s office containing that office’s conclusions. The Board may also listen to any audiotapes that have been made, view videotapes and visit the incident site. Further, the Board may request additional information believed to be necessary for a complete review of the shooting.
 

 [4]
 

 Board reports traditionally consisted of a form recording the Board’s conclusions. However, in 1999 in response to community concerns that the Board was not adequately reviewing police shootings, Uberuaga, as city manager, decided the Board would prepare its reports of police shootings and in-custody deaths in a manner readily understood by the public.
 

 [5]
 

 San Diego City Charter, article V, section 43(d) provides in relevant part: “The board shall submit semiannual reports to the City Manager and City Council concerning its evaluation of the San Diego Police Department’s investigation of citizens’ complaints . . . .” Section 3.8 (T)(2) of the Board’s Procedures provides: “The Board shall make semi annual reports to the City Manager which shall be made public.” However, that local rule “does not (and may not) supersede general law governing privileges or confidentiality of records . . . .”
 
 (Dibb v. County of San Diego
 
 (1994) 8 Cal.4th 1200, 1210, fn. 5 [36 Cal.Rptr.2d 55, 884 P.2d 1003]
 
 (Dibb).)
 

 [6]
 

 At relevant times, section 832.5, subdivision (a) provided in relevant part: “Each department or agency in this state that employs peace officers shall establish a procedure to investigate complaints by members of the public against the personnel of these departments or agencies . . . .” Subdivision (b) provided in relevant part: “Complaints and any reports or findings relating to these complaints shall be retained for a period of at least five years.”
 

 Section 832.5’s purpose is “to provide retention of relevant records while imposing limitations upon their discovery and dissemination.”
 
 (San Francisco Police Officers’ Assn.
 
 v.
 
 Superior Court
 
 (1988) 202 Cal.App.3d 183, 190 [248 Cal.Rptr. 297]
 
 (San Francisco).)
 

 [7]
 

 In
 
 Miller, supra,
 
 24 Cal.3d 703, a case involving Education Code section 4403l’s requirement that school district employees “be given notice of, and opportunity to comment upon, derogatory information in their personnel files ‘which may serve as a basis for affecting the status of their employment’ ”
 
 (Miller,
 
 at p. 706), the Supreme Court stated a school district could not avoid the requirements of such statute “by maintaining a ‘personnel file’ for certain documents relating to an employee, segregating elsewhere under a different label materials which may serve as a basis for affecting the status of the employee’s employment.”
 
 (Id.
 
 at pp. 712-713.)
 

 [8]
 

 Pitchess
 
 v.
 
 Superior Court
 
 (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305],
 

 [9]
 

 Code of Civil Procedure section 1021.5 provides in relevant part: “Upon motion, a court may award attorneys’ fees to a successful party against one or more opposing parties in any
 
 *903
 
 action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement... are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.”