Filed 9/30/13  Quiroz v. Emergency University CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CESAR QUIROZ,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>EMERGENCY UNIVERSITY, et al.,<br><br>      Defendants and Appellants. | A137595<br><br>(San Mateo County<br>Super. Ct. No. CIV-493090) |

## I. INTRODUCTION

Appellants appeal from an order of the trial court granting respondent's attorneys over $141,000 in attorney fees for their successful representation of him in an action he brought against the appellants for unpaid overtime and wages, their failure to make timely payment of wages or meal time breaks to him, and for violating Business and Professions Code section 17200.  We find no abuse of discretion in the trial court's award and thus affirm it.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Respondent was employed as a household worker by Drs. Braun and Test starting around 1992; those two appellants apparently maintained a common household.  In 2000, Dr. Braun founded a business, appellant Emergency University.  Respondent worked full time for all three of these appellants starting in 2001; he ceased his work for them in December 2009.  Respondent's "main job responsibilities included child minding, cooking, running errands, driving and cleaning," all done primarily from Dr. Braun's home; she was also his "supervisor," assigned him "daily tasks," and "hired and fired"

1

him. For these various tasks, respondent was paid at the rate of $8.00 per hour by checks "issued from different bank accounts." He worked for the three appellants, again primarily from the two doctors shared household five days a week and, per his estimates to the court, an average of 12 hours a day. However, he was not paid overtime rates for any of his work time over eight hours a day, although he was entitled "to overtime pay at the rate of time and a half for hours worked between 8 and 12 and double time for time worked over 12 hours per day." Additionally, he was unable to take either "uninterrupted meal breaks" or "ten minute rest breaks" as required by Labor Code section 226.7 and the pertinent orders of the Industrial Welfare Commission.

Among his assigned tasks was to cook "for various persons at the house including the workers that were employed by EMERGENCY UNIVERSITY." At the same time, he was apparently "told to pick up items for Dr. Braun."

Respondent apparently kept time sheets on which he indicated "the dates and hours worked" and the "start time and the end time." However, on these sheets he never indicated whether he was "working for Dr. Braun as an individual or . . . for Emergency University." And Dr. Braun, to whom he "turned in" these time sheets, never made any such distinction either.

According to the trial court's statement of decision, respondent "would often have to wait for his wages and would frequently be paid less than the full amount owing."

As a result of these findings, the trial court awarded respondent $23,585.72 for "past wages," $15,680 for "missed meal and rest periods," $10,000 in interest at the legal rate, $3,000 "in waiting time penalties," and $4,000 in damages under Labor Code section 226, subd. (e). In the clause that gives rise to this appeal, the trial court then said that respondent's attorney's were entitled to attorney fees and costs and "[p]laintiff is required to submit a motion for attorney fees and costs." Counsel for respondent did submit such a motion, resulting in a November 13, 2012, order of the court awarding

2

them $141,080 in attorney fees and $1,352 in costs.[1]  In its order, however, the court denied counsel's request for a multiplier of 1.5 which, if granted, would have brought the attorney fees award into the $220,000 range.

Appellants filed a notice of appeal from this order.

## III. DISCUSSION

A.  *The Issues of What We are Reviewing and the Timeliness of the Appeal.*

Although it does not compose a major portion of either parties' briefs to us, it is pertinent at the outset to consider what it is and what it is not we are reviewing. Respondent refers to the court's June 25, 2012, Statement of Decision (SOD) as also being its "judgment" and, later, argues explicitly that "a statement of decision constituting a final decision on the merits is indeed a judgment and therefore appealable."

Appellants argue to the contrary, noting that that document does not state specifically by which of them the monies ordered paid therein (i.e., the monies not including the later-imposed attorney fees) should be paid.  Indeed, they expressly note that they intend to appeal from the final judgment in this case as and when such is entered.

Although clearly the trial court should have been more precise in what it was ordering via its SOD, both the wording of that document and some well-established law support respondent's proposition that there was indeed a "judgment" entered in his favor via that document.

First of all, the trial court concluded its SOD with these words: "For the reasons set forth hereinabove, judgment will be entered for plaintiff in the amount of $56,263.72 plus attorney fees and costs for violating California Labor Codes.  [¶] IT IS SO ORDERED."[2]  In a case not cited by either party, our Supreme Court has made clear that "[r]eviewing courts have discretion to treat statements of decision as appealable when

---

[1] Respondent's counsel sought and obtained attorney fees pursuant to Labor Code sections 98.2, 218.5 and 1194.

[2] A few paragraphs earlier, it had stated:  "Plaintiff is required to submit a motion for attorney fees and costs."

they must, as when a statement of decision is signed and filed and does, in fact, constitute the court's final decision on the merits." (*Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 901; see also *In re Marriage of Campi* (2013) 212 Cal.App.4th 1565, 1571; *Estate of Lock* (1981) 122 Cal.App.3d 892, 897.) Further, the detailed findings of the trial court regarding the interactions of respondent's three employers support its explicit finding "that there was an 'interrelation of operations' establishing a joint employer relationship." Although, again, the trial court should have made clear that its June 25, 2012, SOD constituted a final judgment for purposes of appeal, under the precedent cited above, we will treat it as such and consider it operable against all three appellants.

However, even if the SOD of June 2012 did not, in fact, constitute a judgment, we will still consider this appeal, for two reasons. First of all, in their opposition to respondent's motion for attorney fees in the trial court, appellants never raised the issue of the possible prematurity of such a motion but, rather, opposed respondent's motion entirely on the merits. They have, therefore, forfeited any right to claim, as they do now in their briefs to us, that the trial court erred in considering and then awarding respondent attorney fees before a formal judgment was entered. Secondly, if no appealable judgment has yet been entered, no time limit is running regarding when a notice of appeal from an order awarding attorney fees must be filed.

Next, whether the June 25, 2012, SOD did or did not constitute a judgment for purposes of appeal, we disagree with respondent that appellants' appeal was untimely. As just noted, the June 25, 2012, SOD constituted a judgment and the appeal was and is an appeal from a post-judgment order. Respondent expressly concedes that the 180-day period of California Rules of Court, rule 8.104(a)(1)(C) applies to an appeal such as this.

B.      *The Trial Court Did Not Abuse its Discretion in its Award of Attorney Fees to Respondent.*

Our standard of review of a trial court's order awarding attorney fees and costs to a prevailing party is clearly abuse of discretion; our Supreme Court has made this clear several times, as have the appellate courts. (See *PLCM Group v. Drexler* (2000) 22

4

Cal.4th 1084, 1095, and cases cited therein.)  Citing that case, one of our sister courts has recently framed the rule thusly: "The amount of fees is within the sound discretion of the trial court and the trial judge is in the best position to evaluate the quality of legal services at trial."  (*Wysinger v. Automobile Club of Southern California* (2007) 157 Cal.App.4th 413, 430.)  As two other courts of appeal have commented, the "amount to be awarded as attorney's fees is left to the sound discretion of the trial court" which will be interfered with by an appellate court "only where there has been a manifest abuse of discretion."  (Respectively, *Vella v. Hudgins* (1984) 151 Cal.App.3d 515, 522; *Fed-Mart Corp. v. Pell Enterprises, Inc.* (1980) 111 Cal.App.3d 215, 228; see also *Bihun v. AT&T Information Systems, Inc.* (1993) 13 Cal.App.4th 976, 997 (*Bihun*), disapproved on other grounds in *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 664; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2011) ¶ 8.94.2, pp. 8-43, 8-44.)  And our Supreme Court has also made clear that the abuse of discretion standard of review presents a very high hurdle for an appellant to climb, i.e., one that requires a showing of a "clear case of abuse" resulting in a "miscarriage of justice."  (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566; *Blank v. Kirwan* (1985) 39 Cal.3d 311, 331.)

Indeed, relatively recently, this court held to the same effect.  In *Children's Hospital & Medical Center v. Bonta* (2002) 97 Cal.App.4th 740, 777 (*Bonta*), Presiding Justice Kline wrote for a unanimous court: "With respect to the *amount* of fees awarded, there is no question our review must be highly deferential to the views of the trial court. [Citation.]  As our high court has repeatedly stated, ' " '[t]he "experienced trial judge is the best judge of the value of professional services rendered in his [or her] court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong"—meaning that it abused its discretion.' " ' [Citations.]"  And we concluded that holding by specifically noting that, per an earlier appellate case, "an appellate court will interfere with a determination of reasonable attorney fees 'only where there has been a manifest abuse of discretion.' " (*Id.* at p. 777.)

5

We conclude that appellants have made no showing of such an abuse here. The core issue before the trial court in its consideration of respondent's motion for attorney fees was the hourly rate to be awarded for the work of respondent's several counsel in preparation for and at the two-plus day trial. The lead counsel for respondent in that trial was Ashwin Ladva who was awarded the hourly rate he requested, i.e., $440; two other attorneys who assisted him were awarded fees based on rates of $410 and $335 per hours worked, and fees were awarded to a paralegal-interpreter at the rate of $125 per hour. As noted above, respondent also requested a multiplier of 1.5, a request that was denied by the trial court. Based on the number of hours respondent's counsel established they had invested in trial preparation and in the trial itself, the trial court awarded them a total of $141,080.

Appellants' main challenges to this award are that the declaration provided by respondent's lead counsel, Ladva, did not provide the trial court with sufficient evidence of "reasonable rates in the local community," i.e., "the San Francisco Bay Area, including San Mateo County, for a comparable non-contingent case, or even that the rate is that prevailing in the community for similar work." Appellants continue: "Because there was no admissible evidence of prevailing rates charged for comparable services in the community and there was no substantial evidence to support this determination . . . the award of attorneys' fees should therefore be reversed."

At oral argument before the trial court on this subject, appellants' counsel contended that the case was "not a particularly complex or difficult case" in which "[t]here was minimal discovery" and a trial lasting only "two days and an hour." He continued by arguing that the community involved was San Mateo County, and that respondent's counsel had adduced no evidence as to what the standard hourly rate was there.

As to this latter argument, the trial court noted—and properly we think—that the relevant community was probably either San Mateo County "or the San Francisco Bay Area" which would include "the major metropolitan area . . . ."

6

In his motion to the trial court and his supporting declarations, respondent's counsel, Ladva, first stated that the "reasonable hourly rates" for him and the attorneys and paralegal assisting him at trial were those eventually awarded by the court. In a supplemental declaration, he asserted that his "normal hourly rate is $440 for litigation." He expanded a bit on this at oral argument before the trial court, when he contended that his $440 per hour fee was "conservative" given his 13 years of experience litigating, specifically, employment cases such as this, and that the overall requested fees (including those for his associates) were particularly reasonable in view of "a very strong and aggressive position" appellants had taken at trial in "not only attacking [respondent's] character but also attacking his working relationship" with appellants. Ladva continued that "this was a very difficult case" because of the length of time it took to prepare respondent for trial because "language issues" and "his level of understanding of what was expected of him or just being able to answer questions directly took . . . a lot of prepping to prepare him" and his witnesses for trial.[3]

The trial court heard this oral argument regarding the proper amount of attorney fees and costs to award, and whether or not there should be a multiplier used on August 31, 2012, and issued its opinion on that issue on November 13, 2012. In it, it stated:

"The Court is impressed that the skill of plaintiff's counsel is reflected in the lodestar figure itself, inasmuch as more skillful attorneys charge higher hourly rates. In the opinion of this Court, the hours incurred in this case were legitimate and necessary.

---

[3] In his supplemental declaration in the trial court, Ladva expanded on the issue of the time consumed in preparing his client, i.e., respondent, for his deposition and trial because of the language problems. He stated: "The time it took for Mr. Olin and myself to prepare Cesar Quiroz for deposition was not duplicative or unnecessary. Mr. Quiroz does not speak English and had difficulties understanding the complexities of the deposition process and all the numerous factual details of his case. It took an extensive amount of time to explain everything to him. Furthermore, Mr. Quiroz would still have trouble understanding the details of this case and require further consultation with Mr. Olin and myself. Also, we needed an interpreter to communicate with Mr. Quiroz, which of course increased the amount of time necessary in all communications and deposition and trial preparation."

At least two of the court appearances were unnecessarily scheduled by defendants when defendants were represented by previous counsel, and were not prepared to go forward. . . . Having reviewed the attorneys' fees and rates, this court believes the rates are reasonable, and that the hours incurred are legitimate and appropriate. Plaintiff's inability to speak English is a legitimate issue, and the time taken to communicate with him is not extraordinary. Accordingly, the Court awards attorneys' fees in the amount of $141,080.00 as follows:

"Ashwin Ladva: 258.4 hours x $440/hr = $113,696.00

"Joseph Olin: 29.5 hours x $335/hr = $9,882.50

"Inna Kurikova: 73.1 hours x $125/hr = $9,137.50

"John Henning: 20.4 hours x $410/hr = $8,364.00

"TOTAL FEE AWARD = $141,080.00

"This court believes the foregoing fees are reasonable, considering the nature of the litigation, the complexity of the issues, and the experience and expertise of counsel."

Both the evidence and material presented to the trial court, as well as the many appellate court cases dealing with the issue under the abuse of discretion standard of review, provides sufficient support for affirming this ruling by the trial court.

First of all, as noted above, Ladva provided a declaration that his normal hourly rate, i.e., per the authority on this subject, his "lodestar" rate was $440 per hour.[4]) This hardly seems off the proverbial chart; 20 years ago, our colleagues in the Fourth District found that an hourly rate of $450 per hour was appropriate for lead counsel for the plaintiff in the successful prosecution of an employment related case, i.e., a case involving sexual harassment of a female employee in the Los Angeles area. (See *Bihun, supra,* 13 Cal.App.4th at pp. 997-998.) Indeed, at least in part, the holding of *Bihun* answers appellants' repeated arguments that respondent never produced evidence in the trial court of the appropriate lodestar rate in the community involved. If a lead plaintiff's

---

[4] Regarding the meaning and background of the concept of a "lodestar" rate of attorney fees, see *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131-1136.

lawyer in an employment-related case in Los Angeles could get a lodestar rate of $450 in a case tried sometime prior to 1993, it is very likely that an attorney with a similar background (which Ladva's declarations make clear he had) could very well be entitled to a $440 hourly rate several decades later.

Ladva's declarations specifically noted that he had been lead counsel for plaintiffs in scores of employment related cases, including "over 8 jury trials and more than 10 bench trials and more than 20 arbitrations." They also noted that "[m]ore than 80% of my practice is dedicated to employment related matters" and that his firm is "currently litigating more than 75 employment cases."

In their briefs to us, appellants concentrate on one allegedly fatal flaw in the declarations submitted by Ladva and the court's finding of the reasonable hourly rates for him and his colleagues: they never noted where his other employment-related litigation was "venued," that there was no evidence presented that his "requested rates were in line with others" in the area involved, and that the trial court thus had made no finding regarding the "reasonable hourly rates according to the prevailing market rates of private attorneys in the community who conduct non-contingent litigation of the same type." Thus, appellants continue: "The court's determination was not supported by any substantial evidence of the prevailing hourly rate in the community for similar work for attorneys with less than 15 years of experience."[5]

Although we agree that Ladva could well have adduced more specific evidence to the trial court regarding the reasonableness of the hourly rates requested, i.e., that such were at or below the normal rate in the San Francisco Bay area for employment-related litigation, we find no abuse of discretion by the trial court in its order granting him that rate and his colleagues their lesser rates. This is so because, among other things: (1) as already noted, Ladva's supplemental declaration specifically noted that his "normal hourly rate is $440 for litigation"; (2) in its order granting the attorney fees, but denying

---

[5] Ladva's original declaration stated that he had been practicing law "for more than 12 years."

9

the requested multiplier, the trial court, which was obviously familiar with such issues via similar motions, specifically noted that "more skillful attorneys charge higher hourly rates"; (3) Ladva's original declaration detailed his extensive concentration on representing plaintiffs in employment-related cases; (4) in oral argument to the trial court, Ladva specifically stated, in answering a question from the court, that he believed $440 an hour "is a reasonable rate for the Bay Area on wage [and] hour cases"; and (5) appellants' counsel offered no evidence whatsoever that the hourly rates requested by Ladva and his colleagues were at all higher than those billed by similar attorneys in the "community" the trial court made clear it was considering, i.e., a "major metropolitan area" such as "the San Francisco Bay Area" and the type of litigation involved, i.e., employment-related litigation.[6]

For all these reasons, and returning to the wording this court adopted in *Bonta*, we find no "manifest abuse of discretion" by the trial court in its award of attorney fees in this case. (*Bonta, supra,* 97 Cal.4th at p. 777.)

---

[6] This court and at least one other appellate court, in rulings affirming the amount of attorney fees awarded, have specifically noted that the parties contesting those fees presented no contrary evidence regarding their reasonableness. (See this court's rulings in *Bonta*, *supra,* 97 Cal.App.4th at p. 783; *Davis v. City of San Diego* (2003) 106 Cal.App.4th 893, 904.)

## IV. DISPOSITION

The order awarding attorney fees to respondent's counsel is affirmed.

_____
Haerle, J.

We concur:

_____
Kline, P.J.

_____
Brick, J.[*]

_____

[*] Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11