Grimes, J., concurring and dissenting.
I concur in the majority opinion with one significant exception. I cannot accept the majority's principal conclusion: that when the personnel records of a peace officer, who is a potential witness in a pending criminal prosecution, *449 contain sustained allegations of misconduct, the Los Angeles County Sheriff's Department (Department) cannot disclose that fact to the prosecutor, "absent a properly filed, heard, and granted Pitchess motion,[1 ] accompanied by a corresponding court order." (Maj. opn. ante, at p. 80.) *81 In my view, the Pitchess statutes,[2] construed as we have always done "against the larger background of the prosecution's [ Brady obligation]" ( People v. Mooc (2001) 26 Cal.4th 1216, 1225, 114 Cal.Rptr.2d 482, 36 P.3d 21 ( Mooc )), do not prohibit the disclosures permitted by the trial court's injunction. I conclude the trial court properly harmonized the Brady[3] and Pitchess authorities in refusing to enjoin the Department from disclosing to the district attorney the identity of any deputy on the Department's Brady list who is a potential witness in a pending criminal prosecution.
As explained post , my conclusion is supported by analysis of case authorities, including People v. Superior Court ( Johnson ),[4] by years of past practice, and by the unworkability of requiring a prosecutor to make a Pitchess motion merely to find out whether or not a deputy in a pending prosecution has potential Brady material in his personnel file.
A Pitchess motion is clearly required for anyone, including the district attorney, to obtain an officer's personnel records or the disciplinary information in them. No motion is required to transfer, between members of the prosecution team, the identities of officers involved in a pending prosecution who may have Brady materials in their personnel records. There is no Pitchess violation in a procedure that is consonant with Brady obligations and that does not involve a prosecutor's perusal of any information in an officer's personnel file.
1. A Preliminary Consideration
The majority characterizes the trial court as having "acknowledged that such a disclosure ... violates the Pitchess statutes," but nonetheless found that Brady compels the violation of state law. (Maj. opn. ante , at p. 58.) I disagree with this characterization of the trial court's holding.
At the outset, the trial court recognized this case involves "the interplay of the Brady Doctrine versus the Pitchess statutes and the confidentiality of *450 peace officer personnel files." The court said: "[T]hey [ (law enforcement agencies) ] have a constitutional duty to disclose Brady information in a particular criminal case, but they don't have a duty to do and what the Pitchess statutes prohibit is the preparation of a Brady list that is communicated outside the Department, in this case, to a prosecuting agency about deputies when there is no pending criminal case in which that deputy is involved. I believe that is unlawful."[5] (Boldface and italics added.) The court went on to agree that the Department is "required to provide the names of employees with potential exculpatory impeachment material in their personnel file to the District Attorney, ... when there is a pending case."
In my view, the trial court simply harmonized Pitchess and Brady , and did not conclude that disclosure to the prosecutor in a pending prosecution violates the Pitchess statutes, or that Brady compels *82 any such violation, or that the Pitchess statutes "are unconstitutional." (Maj. opn. ante , at p. 65.) The majority says the trial court "[e]ssentially" or "effectively" did so (maj. opn., ante , at pp. 62-63, 65-66). While I disagree, I find it unnecessary to debate or resolve the trial court's thinking on the point. But the majority uses its construction of the trial court's decision to raise issues that are unnecessary to a resolution of this case: namely, whether the Pitchess statutes are constitutional (they are), and whether a police department must institute Brady procedures like the ones at issue in this case.
As to the latter point, the majority says the trial court "effectively held that law enforcement agencies have an affirmative constitutional obligation ... to notify the prosecutor whenever one of their peace officers has a founded allegation of misconduct involving moral turpitude in his or her personnel file, so long as that officer is also a potential witness in a pending criminal case." (Maj. opn. ante , at p. 65.) I do not construe the trial court's injunction as creating any affirmative duty on the part of the Department or any other law enforcement agency. The trial court's injunction prohibits the Department from disclosing its Brady list to the prosecutor (a point not at issue in this writ proceeding). The injunction does not compel the Department to do anything. It simply allows the Department to implement its decision that its Brady obligations are best fulfilled by giving the names of peace officers with Brady material in their files to prosecutors when charges are pending.[6] The injunction, and a decision by this court to affirm it, would not require any *451 other law enforcement agency to institute similar practices. It would merely confirm that such a practice is consonant with Brady and does not violate Pitchess .
That leads me to one other preliminary point. In its petition and its reply, petitioner repeatedly maintains that only the prosecutor has a Brady duty to disclose exculpatory or impeachment information to the defendant. In re Brown tells us that the high court "has unambiguously assigned the duty to disclose [to the defendant] solely and exclusively to the prosecution; those assisting the government's case are no more than its agents." ( In re Brown (1998) 17 Cal.4th 873, 881, 72 Cal.Rptr.2d 698, 952 P.2d 715.) This means that "the prosecution remains responsible for any lapse in compliance," and "must be charged with any negligence on the part of other agencies acting in its behalf [citations]." ( Ibid. ) This has nothing to do with the law enforcement agency's own obligation to reveal Brady information to the prosecutor. It only means that the prosecutor will pay the price for peace officer negligence. (See United States v. Blanco (9th Cir. 2004) 392 F.3d 382, 394 [" Brady ... impose[s] obligations not only on the prosecutor, but on the government as a whole"]; see also United States v. Zuno-Arce (9th Cir. 1995) 44 F.3d 1420, 1427 ["it is the government's, not just the prosecutor's, conduct which may give rise to a Brady violation"].)
2. The Disclosure Permitted by the Trial Court Does Not Violate the Pitchess Statutes
I agree with the majority-indeed, everyone agrees-that Brady principles and *83 Pitchess procedures have long been interpreted together and in harmony. ( City of Los Angeles v. Superior Court (2002) 29 Cal.4th 1, 14, 124 Cal.Rptr.2d 202, 52 P.3d 129 ["the ' " Pitchess process" operates in parallel with Brady and does not prohibit the disclosure of Brady information' "]; Mooc, supra, 26 Cal.4th at p. 1225, 114 Cal.Rptr.2d 482, 36 P.3d 21 [the Pitchess "procedural mechanism for criminal defense discovery ... must be viewed against the larger background of the prosecution's constitutional obligation to disclose to a defendant material exculpatory evidence so as not to infringe the defendant's right to a fair trial"].)
I see nothing to prevent continued harmonization in this case.
a. The Copley Press line of cases
The crux of the difference between the majority's analysis and mine lies in the construction of Supreme Court cases that have held that a deputy's *452 identity is confidential under the Pitchess statutes, and may not be disclosed to the public, where the records in question "linked the officer's name ... to a confidential disciplinary action involving the officer...." ( Long Beach Police Officers Assn. v. City of Long Beach (2014) 59 Cal.4th 59, 73, 71, 172 Cal.Rptr.3d 56, 325 P.3d 460 ( Long Beach ), discussing Copley Press, Inc. v. Superior Court (2006) 39 Cal.4th 1272, 48 Cal.Rptr.3d 183, 141 P.3d 288 ( Copley Press ); see also Commission on Peace Officer Standards & Training v. Superior Court (2007) 42 Cal.4th 278, 298, 64 Cal.Rptr.3d 661, 165 P.3d 462 ( Commission ) [explaining that "[i]n Copley Press , we held that records of peace officer disciplinary appeals ... constituted confidential personnel records under [Penal Code] section 832.7, and that the Court of Appeal had erred in ordering disclosure of the name of the deputy involved in a particular matter."].)[7]
Unlike the majority, I cannot read those Supreme Court cases as supporting the notion that in a pending prosecution, a law enforcement agency may not tell the prosecutor that a potential witness in that criminal case has potential exculpatory or impeachment information in his or her personnel file that might impair the officer's credibility on the witness stand. None of those cases stands for that proposition. Indeed, none of them was decided in a context where Brady principles were also in play. None of them even mentions Brady . All of them arose from claims by a media organization under the California Public Records Act (CPRA) for release of information to the general public. Copley Press held that the CPRA did not "require[ ] disclosure to a newspaper publisher of records of [a county commission] relating to a peace officer's administrative appeal of a disciplinary matter" ( Copley Press, supra, 39 Cal.4th at p. 1279, 48 Cal.Rptr.3d 183, 141 P.3d 288 ), and that the deputy's identity was confidential under Penal Code section 832.7, which was "designed to protect, among other things, 'the identity of officers' subject to complaints."
*84 ( Copley Press, at p. 1297, 48 Cal.Rptr.3d 183, 141 P.3d 288.)
Thus, Copley Press involved a media request for "records, including the name of the peace officer," relating to the officer's appeal of a disciplinary matter. ( Copley Press, supra, 39 Cal.4th at p. 1279, 48 Cal.Rptr.3d 183, 141 P.3d 288.) Both Long Beach and Commission explain Copley Press as involving the release to the public of records that linked the officer's name "to a confidential disciplinary action *453 involving the officer" ( Long Beach, supra, 59 Cal.4th at p. 73, 172 Cal.Rptr.3d 56, 325 P.3d 460 ) and disclosed "the name of the deputy involved in a particular matter" ( Commission, supra, 42 Cal.4th at p. 298, 64 Cal.Rptr.3d 661, 165 P.3d 462 ).
The majority apparently believes both that the prosecutor in a pending prosecution is no different from the general public, and that the Department's identification of a deputy as having Brady material in his records is the equivalent of releasing disciplinary records that link the deputy to the "particular matter" ( Commission, supra, 42 Cal.4th at p. 298, 64 Cal.Rptr.3d 661, 165 P.3d 462 ). I do not.
The disclosure the trial court permitted in this case is entirely different from the disclosure prohibited in Copley Press . As we have seen, the disclosure is from a law enforcement member of the prosecution team to the prosecutor in a pending criminal proceeding, not a disclosure to the general public. And the disclosure does not involve records of any specific disciplinary incident-or any records at all. The disclosure is simply of the fact, known to the Department, that there may be Brady material in the officer's personnel records. And as we know, the prosecutor is charged with knowledge of exculpatory evidence known to members of the prosecution team, including law enforcement, and has a duty to disclose material exculpatory evidence, even if not requested to do so by the accused. ( Johnson, supra, 61 Cal.4th at p. 709, 206 Cal.Rptr.3d 606, 377 P.3d 847.) Under these circumstances, I cannot fathom a conclusion that keeps the prosecutor in the dark about the Department's knowledge of Brady material in the files of a deputy who may be a witness in a pending proceeding.
In the majority's view, there is no material distinction between the disclosure of a deputy's name to the prosecutor, and the disclosure of identifying records to the general public forbidden in Copley Press . The majority points out that "[t]he prosecution, like the defense, cannot discover peace officer personnel records without first following the Pitchess procedures." (Maj. opn. ante, at p. 67.) I agree, of course; Johnson reminds us of the same point: "we have said that [ Penal Code section 832.7, subdivision (a) ] requires the prosecution, as well as the defendant, to comply with the Pitchess procedures if it wishes to obtain information from confidential personnel records." ( Johnson, supra, 61 Cal.4th at p. 712, 206 Cal.Rptr.3d 606, 377 P.3d 847.) But that principle on its face applies to "obtain[ing] information from confidential personnel records." ( Ibid. ) That is not what the trial court's injunction here permits, and it is what Copley Press prohibits.
In short, I see nothing in the Copley Press line of cases-none of which involves harmonization of Pitchess and Brady principles-that is inconsistent *454 with the trial court's ruling, or that supports the proposition that the disclosures permitted by the trial court violate the Pitchess statutes.[8] *85 b. Practical considerations
The majority holds that the language in the injunction allowing the Department "to disclose the identity of any individual deputy on the Brady list" to anyone outside the Department, "absent a properly filed and granted Pitchess motion and corresponding court order," must be stricken. (Maj. opn. ante , at p. 73.)
I must confess that I may not understand the practical import of this holding, which tells us that a prosecutor must file a Pitchess motion to obtain the identity of a deputy on the Brady list, that is, to find out whether or not a deputy in a pending prosecution has potential Brady material in his or her file. But the Pitchess procedures themselves demonstrate the unworkability of making a Pitchess motion for that purpose.
A Pitchess motion cannot be made unless the prosecutor knows the identity of the officer in question. ( Pitchess motions require, among other things, "[i]dentification of ... the peace or custodial officer whose records are sought...." ( Evid. Code, § 1043, subd. (b)(1).)) So, the real effect of the majority's holding would seem to be either (1) to prevent entirely any disclosure of the identity of a Brady -list officer by the Department to the prosecutor, or (2) to require the prosecutor to make Pitchess motions for every officer involved in a pending criminal case (though it is hard to see how the requisite "good cause" could be shown), or (3) to require the prosecutor to risk the consequences of possible failure to disclose exculpatory Brady material to the defendant. This is an unacceptable and, in my view, entirely unnecessary conundrum, created by the erroneous conclusion that the disclosure permitted by the trial court violates the Pitchess statutes. No case has so held and, as discussed above, the Copley Press line of cases does nothing, in my view, to advance the majority's position.
The purport of the majority's decision is that it is illegal under Pitchess for any law enforcement agency to tell the prosecutor in a pending criminal *455 proceeding that a potential witness may have Brady material in his or her records. But the record in this case suggests that law enforcement agencies across the state have been doing so for years-not under a formalized procedure as attempted in this case (although that, too, has been happening since at least 2010), but in response to informal requests from prosecutors.
For example, the Attorney General tells us that similar policies are "already in use by a number of district attorneys' offices and law enforcement agencies." ( 98 Ops.Cal.Atty.Gen. 54 (2015) [2015 Cal.AG Lexis 7, pp.*15-*16; see id. at p. *23] [referring to "these ongoing practices" and observing that "[w]e understand that a number of police departments employ policies similar to the one under consideration here"].) The procedures in the Johnson case (see pt. c., post ) were implemented in 2010, and the order doing so explained the procedures were adopted because " '[r]epetitive requests by the District Attorney that the [Police] Department check employee personnel files of Department employees who may be witnesses create unnecessary paperwork and personnel costs....' " ( *86 Johnson, supra, 61 Cal.4th at pp. 707, 725, 206 Cal.Rptr.3d 606, 377 P.3d 847.) Clearly, whether formalized or otherwise, law enforcement agencies-at least in some parts of the state-have been identifying police officers with Brady material in their personnel files to prosecutors for years. (As the trial court observed, correctly or not, "I assume [the Department's] been doing that for the last 50 years or however long Brady has existed.") I cannot sign on to the majority's conclusion that these actions by law enforcement agencies violate California law.
c. People v. Superior Court ( Johnson )
That brings me to the Johnson opinion, described in detail by the majority. (Maj. opn., ante, at pp. 73-76.) Johnson held that "the prosecution does not have unfettered access to confidential personnel records of police officers who are potential witnesses in criminal cases," but "must follow the same procedures that apply to criminal defendants, i.e., make a Pitchess motion, in order to seek information in those records." ( Johnson, supra, 61 Cal.4th at p. 705, 206 Cal.Rptr.3d 606, 377 P.3d 847.) And, where the police department, "acting pursuant to procedures it has established," informed the district attorney that confidential personnel records of peace officers who were potential witnesses might contain exculpatory information, "the prosecution fulfills its Brady duty as regards the police department's tip if it provides the defense information it received from the police department, namely, that the specified records might contain exculpatory information." ( Ibid. )
In my view, Johnson supports, if not compels, the conclusion that the Pitchess statutes do not preclude the procedure the trial court approved here. In Johnson , the police department "informed the district attorney that the officers' personnel records might contain Brady material...." ( *456 Johnson, supra, 61 Cal.4th at p. 715, 206 Cal.Rptr.3d 606, 377 P.3d 847.) Johnson observed that "[n]o one disputes" that the prosecution then "had a duty under Brady ... to provide this information to the defense." ( Ibid. ) The question in Johnson was "whether the [ Brady ] obligation goes beyond that." ( Ibid. ) The answer was "no," because, "[i]f the prosecution informs the defense of what it knows regarding information in confidential personnel records, and the defense can seek that information itself, no evidence has been suppressed." ( Ibid. ) The court further explained: "Because a defendant may seek potential exculpatory information in those personnel records as well as the prosecution, the prosecution fulfills its Brady obligation if it shares with the defendant any information it has regarding whether the personnel records contain Brady material, and then lets the defense decide for itself whether to file a Pitchess motion." ( Id. at p. 716, 206 Cal.Rptr.3d 606, 377 P.3d 847.)
The majority appears to believe that the same result is appropriate-letting the defense decide whether to file a Pitchess motion-even when the prosecution does not share information, known to the law enforcement agency, that there is Brady material in the officer's file. Thus the majority observes that Johnson "flatly rejected" the defendant's claim that Pitchess procedures were inadequate to protect his right to exculpatory information under Brady . (Maj. opn. ante, at p. 75-76.) But the majority fails to consider that Johnson found Pitchess procedures would "ensure that defendants receive the [ Brady ] information to which they are entitled" ( Johnson, supra, 61 Cal.4th at p. 720, 206 Cal.Rptr.3d 606, 377 P.3d 847 ) in a context where the police told the prosecutor, who shared with the defense , the fact that there was Brady material in the officers' files. In other words, the premise for everything Johnson tells us is that the law enforcement *87 agency told the prosecutor there was potentially exculpatory Brady material in police officers' personnel files, and the prosecutor disclosed that fact to the defense.[9] *457 The majority nevertheless insists that Johnson did not mention, discuss or decide the legality under Pitchess of the police department's initial disclosure to the prosecutor, and so this court is now free to decide that such disclosures are in fact illegal under Pitchess . I recognize, of course, that Johnson did not expressly decide or discuss the point. And I am well aware that an opinion does not stand for a principle that the court was never asked to decide. Nonetheless, I cannot imagine the Johnson court could have failed to question the legality, under the very statutory scheme it was discussing, of the police department's disclosures to the prosecution, if there was any basis to do so.
The procedures the police department established in Johnson were appended in their entirety to the Supreme Court's opinion. The opinion specifically quotes from the police department's order summarizing the procedure: " '[T]he Department advises the District Attorney's Office of the names of employees who have information in their personnel files that may require disclosure under Brady . The District Attorney's Office then makes a motion under Evidence Code 1043 and 1045 for in camera review of the records by the court.' " ( Johnson, supra, 61 Cal.4th at p. 707, 206 Cal.Rptr.3d 606, 377 P.3d 847.) The police department's disclosure of the officer's name is the foundation of the entire procedure. The fact of that disclosure is repeated several times throughout the order appended to the Johnson opinion.
In my view, had there been any doubt as to the legality of the disclosure of the names of officers with Brady information in their files, the court would have noticed it and requested briefing on it. The author in Johnson , Justice Chin, is steeped in Pitchess procedures. He wrote the opinion in Copley Press , and he dissented in Commission , taking the view that, under Penal Code section 832.7, an officer's name cannot be disclosed to the public even if it is not linked to private or sensitive information listed in section 832.8. ( Commission, supra, 42 Cal.4th at p. 311, 64 Cal.Rptr.3d 661, 165 P.3d 462 (dis. opn. of Chin, J.).) In short, the Johnson court was supremely cognizant of the confidentiality requirements of the Pitchess statutes-and it premised its opinion on a procedure the linchpin of which is a disclosure by the *88 police department of Brady -list names to the prosecutor.
Johnson is clear: "In this case, the police department has laudably established procedures to streamline the Pitchess / Brady process. It notified the prosecution, which in turn notified the defendant, that the officers' personnel records might contain Brady material. A defendant's providing of that information to the court, together with some explanation of how the officer's credibility might be relevant to the proceeding, would satisfy the showing necessary under the Pitchess procedures to trigger in camera review." ( Johnson, supra, 61 Cal.4th at p. 721, 206 Cal.Rptr.3d 606, 377 P.3d 847.)
*458 In sum, I believe the Johnson case is good reason to conclude that the disclosures permitted by the trial court in no way violate the Pitchess statutes. But even absent Johnson , I think it is apparent, for the reasons discussed above, that the disclosures permitted by the trial court in this case do not violate the Pitchess statutes.
3. Summary and Conclusion
In summary, and at the risk of repetition, I return to one of my introductory points. This case does not present the question whether Brady principles mandate disclosure of officer names to the prosecutor. The trial court's injunction merely allows the Department to implement a determination that it can best fulfill its Brady obligations by giving the names of peace officers with Brady material in their files to prosecutors when charges are pending. The injunction mandates nothing of the Department or any other law enforcement agency.
The question presented to us is whether the Pitchess statutes preclude the disclosure of Brady -list names by the Department to the prosecutor in a pending prosecution. The courts have always viewed Pitchess "against the larger background" of the prosecution's constitutional Brady obligations. ( Mooc, supra, 26 Cal.4th at p. 1225, 114 Cal.Rptr.2d 482, 36 P.3d 21.) We would do no more here, by finding no Pitchess violation in a procedure that is consonant with Brady obligations and that does not involve a prosecutor's perusal of any information in an officer's personnel file. For these reasons, I would affirm this aspect of the trial court's preliminary injunction.
In all other respects, I concur with the views expressed in the majority opinion.

Pitchess v. Superior Court (1974) 11 Cal.3d 531, 113 Cal.Rptr. 897, 522 P.2d 305 (Pitchess ).

As the majority explains, the Pitchess statutes are Penal Code sections 832.7 and 832.8 and Evidence Code sections 1043 through 1045.

Brady v. Maryland (1963) 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (Brady ).

People v. Superior Court (Johnson ) (2015) 61 Cal.4th 696, 206 Cal.Rptr.3d 606, 377 P.3d 847 (Johnson ).

We have no occasion in this case to determine whether the trial court was correct on that point. This writ proceeding presents only the question whether the Pitchess statutes prohibit the communication of the name of a Brady - list deputy by the Department to the prosecutor in a pending prosecution.

Indeed, the majority, in rejecting petitioner's challenge to the language elsewhere in the injunction stating the Department is "not precluded from maintaining a 'Brady List' internally," recognizes that that language "does not affirmatively compel ... the [Department] to review personnel records and create a Brady list[.]" (Maj. opn. ante, at p. 70; see also id. at pp. 79-80 [the injunction "does not affirmatively compel ... the [Department] to make transfers or impose restrictions of duty"].)

In Long Beach, the court permitted disclosure to The Los Angeles Times of names of officers involved in on-duty shootings, observing that disclosure "would not imply that those shootings resulted in disciplinary action against the officers, and it would not link those names to any confidential personnel matters or other protected information." (Long Beach, supra, 59 Cal.4th at pp. 73, 64, 172 Cal.Rptr.3d 56, 325 P.3d 460.) In Commission, the court permitted disclosure of names, employing department, and hiring and termination dates of peace officers included in an agency's database; those records were not rendered confidential by the Pitchess statutes. (Commission, supra, 42 Cal.4th at p. 284, 64 Cal.Rptr.3d 661, 165 P.3d 462.)

Petitioner's authority for the proposition that an employing agency is prohibited from making voluntary public disclosure of confidential peace officer records (Davis v. City of San Diego (2003) 106 Cal.App.4th 893, 902, 131 Cal.Rptr.2d 266 ) is likewise inapt. Davis held that narrative reports on a police shooting constituted confidential personnel records under the Pitchess statutes (Davis, at p. 902, 131 Cal.Rptr.2d 266 ), and the city was "statutorily precluded from voluntarily disclosing those reports to the public" (id. at p. 898, 131 Cal.Rptr.2d 266 ). Again, the case involves a release of specific records to the general public, does not mention Brady, and has nothing to do with harmonizing Brady obligations.

The majority (maj. opn. ante, at pp.71-73) relies on People v. Gutierrez (2003) 112 Cal.App.4th 1463, 6 Cal.Rptr.3d 138 for the proposition that "Pitchess procedures implement Brady rather than undercut it, because a defendant who cannot meet the less stringent Pitchess standard cannot establish Brady materiality." (Gutierrez, at p. 1474, 6 Cal.Rptr.3d 138.) The majority points out that Johnson cited Gutierrez for the principle that " ' "the two schemes operate in tandem." ' " (Maj. opn. ante, at p. 75, quoting Johnson, supra, 61 Cal.4th at p. 720, 206 Cal.Rptr.3d 606, 377 P.3d 847.) Of course I agree with those principles, but I do not see how Gutierrez is relevant in this case. Gutierrez rejected the defendant's contention that the statutory Pitchess procedures violated Brady (on the ground, among others, that "the prosecutor was obliged to conduct a review of the files of 'all significant police officer witnesses' and disclose any Brady material"). (Gutierrez, at pp. 1474-1475, 6 Cal.Rptr.3d 138.) Gutierrez rejected that claim, pointing out that the prosecutor "does not generally have the right to possess and does not have access to confidential peace officer files," so the defendant's argument for routine review of those files "necessarily fails." (Id. at p. 1475, 6 Cal.Rptr.3d 138.) Assuming that to be correct, I do not see its relevance to the circumstances here, where no one has suggested that the district attorney may review an officer's personnel file without following Pitchess procedures.