[No. B160082. Second Dist., Div. Three. Oct. 30, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
CHRISTOPHER ANTHONY GUTIERREZ, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III.B., C., D., E., and F.

1464

**COUNSEL**

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Scott A. Taryle and Carl N. Henry, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ALDRICH, J.—**

## I. INTRODUCTION

Defendant Christopher Anthony Gutierrez was convicted by a jury of forcible oral copulation and forcible sexual penetration with a foreign object while acting in concert. Prior to trial, Gutierrez moved for *Pitchess*[1] disclosure of information in the personnel records of the two officers who arrested him. The trial court declined to conduct an in camera hearing, finding Gutierrez had failed to establish good cause as required by Evidence Code section 1043, subdivision (b)(3).

Gutierrez contends that the statutory *Pitchess* framework, as applied in criminal cases, conflicts with the principles expressed in *Brady v. Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215, 83 S.Ct. 1194], in violation of his due process rights. According to Gutierrez, the statutory *Pitchess* procedures (1) impermissibly interfere with the prosecutor's duty to ascertain and disclose material, exculpatory evidence to the defense, and (2) improperly place upon the defendant the burden of establishing good cause for *Brady* disclosure. Gutierrez further contends that the trial court erred by admitting evidence of his prior conviction pursuant to Evidence Code section 1108, a statute he complains is unconstitutional; admitting hearsay evidence; and instructing the jury with CALJIC Nos. 2.50.02 and 17.41.1.

In the published portion of this opinion, we reject Gutierrez's claims that the statutory *Pitchess* procedures run afoul of *Brady*. In the unpublished portion of the opinion, we reject Gutierrez's other claims. Accordingly, we affirm the judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Facts.*

On August 12, 2001, shortly before midnight, the victim, Sandra C., was working as a prostitute. Gutierrez and Robert Ruiz were driving in a Honda Civic when they encountered Sandra and agreed to pay her $15 or $20 for sexual services for both of them. Sandra entered the car and directed them to drive to a motel, but Ruiz, who was driving, took her to another location. When Sandra entered the Honda, she stated, "I get paid first." Gutierrez replied, "Shut up, bitch. Bitch, you're going to do what we tell you to do." He put his hand around Sandra's throat and shoved her back into the car, causing abrasions on her shoulder. Gutierrez lowered his pants. Sandra

---

[1] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305].

remained huddled in the corner of the car and asked whether Gutierrez was going to hurt her. He replied, "No. As long as you do what we tell you to do." Gutierrez forced her to orally copulate him and digitally penetrated her vagina. From comments made by Gutierrez and Ruiz, Sandra surmised they were armed with a gun. She was afraid of them. Ruiz at one point stated, "What do we do if the cops come[?]" Gutierrez replied, "We'll just blast them. You got your nine?" Ruiz replied affirmatively. When Sandra pleaded to leave and promised not to tell police about the incident, Gutierrez replied, "No. You're just gonna do what we tell to you do [*sic*]." Ruiz also forced her to orally copulate him while Gutierrez digitally penetrated her anus. Gutierrez then forcibly removed all Sandra's clothing and Ruiz attempted to rape her. Ruiz stated, "Ah, man, she got a good look at our face. What are we gonna do now?" Gutierrez did not reply but forced Sandra to orally copulate him again. During this episode, when Sandra saw the lights of passing cars, she attempted to exit the Honda, but was prevented by Gutierrez.

Officer Jason Schwab of the Los Angeles Police Department and his partner were on patrol in the area and pulled alongside Gutierrez's car. When Schwab illuminated the Honda with a spotlight, Sandra pulled her head from Gutierrez's lap area, jumped from the vehicle, naked and "hysterical," and said, "Help me. They're raping me." She informed Schwab that the men had a gun. When Sandra had raised her head before jumping out of the vehicle, Gutierrez had attempted to push her head back down. According to Schwab, prostitutes normally do not completely disrobe when working in vehicles, in order to make it "harder for vice to try to catch them." Sandra's dress, missing its straps, and her bra were found in the Honda. No gun was discovered. The two men only had $6.10 in cash between them.

Ruiz pleaded guilty to rape in concert in exchange for a three-year prison sentence. Part of the plea agreement was that Ruiz would testify truthfully and completely at all future proceedings regarding the incident. Sandra's whereabouts were unknown at the time of trial, and she did not testify. Her statements to Officer Schwab recounting the incident were admitted into evidence as spontaneous statements.

B. *Procedure.*

Trial was by jury. Gutierrez was found guilty of forcible sexual penetration by a foreign object while acting in concert (Pen. Code, § 264.1)[2] and two counts of forcible oral copulation (§ 288a, subd. (c)(2)). The jury acquitted Gutierrez of rape while acting in concert, of one count of forcible sexual penetration by a foreign object, and of unlawfully driving or taking a vehicle. In a bifurcated proceeding, the trial court found true allegations that Gutierrez had suffered a prior "strike" conviction for attempted murder (§§ 667,

---

[2] All further undesignated statutory references are to the Penal Code.

subds. (a)(1), (b)–(i), 1170.12, subds. (a)–(d)). The trial court further found Gutierrez had served one prior prison term within the meaning of section 667.5, subdivision (b). It denied his *Romero*[3] motion to strike a prior conviction allegation and sentenced him to a total term of 55 years in state prison. It also imposed restitution, parole revocation, and other fines. Gutierrez appeals.

## III. DISCUSSION

### A. *California's statutory Pitchess scheme does not infringe upon Gutierrez's due process rights or violate Brady v. Maryland.*

#### 1. *Additional facts.*

Gutierrez filed a pretrial *Pitchess* motion seeking disclosure of personnel and administrative records of Officer Schwab and his partner, Officer Farell, "concerning any acts involving falsification of testimony, fabrication of evidence, false police reports, perjury, aggressive behavior, racial or gender bias," and actual or attempted violence and excessive force. Defense counsel's supporting declaration averred that the requested discovery was material and relevant because the encounter between Gutierrez and Sandra was consensual; Sandra was alleging rape as a way to avoid prosecution for prostitution; and the arresting officers were "lying when they allege [Gutierrez] was holding the victim's head down forcibly . . . in order to bolster [the] victim's rape claim." In his memorandum of points and authorities in support of the requested disclosure, Gutierrez argued, "*Pitchess* compliance must include and be consistent with the defendant's constitutional right to *Brady* evidence." The Los Angeles Police Department opposed the motion.

The trial court denied the *Pitchess* motion because Gutierrez had failed to show good cause. Gutierrez's allegations, the trial court found, amounted to nothing more than a general denial of the charges, and the theory advanced in his moving papers was implausible. The trial court pointed out that officers would have been unlikely to fabricate the fact that Gutierrez held the victim's head down because such action was not an element of the crime.

#### 2. *Discussion.*

Gutierrez urges that his convictions must be reversed because the trial court failed "to order full disclosure of police officer character evidence under *Brady v. Maryland.*" He does not challenge the trial court's finding that he

---

[3] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628].

failed to establish good cause for the disclosure.[4] Instead, he contends that the statutory *Pitchess* procedures (sections 832.5, 832.7, 832.8, and Evidence Code sections 1043 and 1045) unconstitutionally infringe upon his due process rights in three respects. First, he asserts, *"Brady* dictates more generous discovery than *Pitchess,"* and to the extent the statutory *Pitchess* scheme shields *Brady* evidence from disclosure, the *Pitchess* provisions are invalid. Second, he posits that *Brady* imposes upon prosecutors a duty to examine the personnel records of "all significant police officer witnesses" and disclose any exculpatory or impeaching information. The statutory *Pitchess* procedures, he complains, undercut the prosecutor's ability to carry out these duties. Third, he argues the statutory scheme impermissibly burdens a defendant by requiring that he or she establish good cause for disclosure of information that the prosecutor is already under a duty to disclose. For these reasons, he contends, the *Pitchess* procedures are unconstitutional when applied in criminal cases. We disagree.[5] Gutierrez's claims are foreclosed by the California Supreme Court's recent decisions in *City of Los Angeles v. Superior Court (Brandon)* (2002) 29 Cal.4th 1 [124 Cal.Rptr.2d 202, 52 P.3d 129] *(Brandon)* and *Alford v. Superior Court* (2003) 29 Cal.4th 1033 [130 Cal.Rptr.2d 672, 63 P.3d 228].

 a. *Brady disclosure.*

■ Under *Brady, supra,* 373 U.S. at page 87, a prosecutor must disclose any evidence that is favorable to the defendant and material on the issue of guilt or punishment. *(Brandon, supra,* 29 Cal.4th at p. 7; *People v. Jordan* (2003) 108 Cal.App.4th 349, 358 [133 Cal.Rptr.2d 434].) The *Brady* disclosure obligation encompasses both impeachment and exculpatory evidence, and exists regardless of whether the defendant makes a specific request for the information. *(Strickler v. Greene* (1999) 527 U.S. 263, 280 [144 L.Ed.2d 286, 119 S.Ct. 1936]; *United States v. Bagley* (1985) 473 U.S. 667, 676 [87 L.Ed.2d 481, 105 S.Ct. 3375]; *Brandon, supra,* at p. 8; *In re Brown* (1998) 17

---

 [4] Accordingly, we express no opinion on the question of whether Gutierrez established good cause for the requested in camera review.

 [5] The People argue that Gutierrez has waived his claim that the *Pitchess* procedures are unconstitutional because he did not raise it below. However, as noted, Gutierrez's memorandum of points and authorities in support of his *Pitchess* motion argued that *"Pitchess* compliance must include and be consistent with the defendant's constitutional right to *Brady* evidence" and "the due process rights guaranteed by the U.S. Constitution and explained by *Brady* cannot be limited or restricted by state law." This argument sufficiently raised the issue to preserve it for review. *(Hale v. Morgan* (1978) 22 Cal.3d 388, 394 [149 Cal.Rptr. 375, 584 P.2d 512]; *People v. Scott* (1978) 21 Cal.3d 284, 290 [145 Cal.Rptr. 876, 578 P.2d 123] [objection is sufficient if it fairly apprises the trial court of the issue it is being called upon to decide; in a criminal case, an objection will be deemed preserved if, despite inadequate phrasing, the record shows the court understood the issue presented].) Moreover, we may consider for the first time on appeal a pure question of law which is presented by undisputed facts. *(People v. Yeoman* (2003) 31 Cal.4th 93, 118 [2 Cal.Rptr.3d 186, 72 P.3d 1166].)

Cal.4th 873, 879 [72 Cal.Rptr.2d 698, 952 P.2d 715].) "The scope of this disclosure obligation extends beyond the contents of the prosecutor's case file and encompasses the duty to ascertain as well as divulge 'any favorable evidence known to the others acting on the government's behalf," including the police. (*In re Brown, supra,* at p. 879; *Strickler v. Greene, supra,* 527 U.S. at pp. 280–281; *Kyles v. Whitley* (1995) 514 U.S. 419, 437–438 [131 L.Ed.2d 490, 115 S.Ct. 1555].)

█ Evidence is material under *Brady* if there is a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed. (*Brandon, supra,* 29 Cal.4th at pp. 7–8; *Strickler v. Greene, supra,* 527 U.S. at pp. 289–290.) "A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.' [Citation.]" (*Kyles v. Whitley, supra,* 514 U.S. at p. 434; *In re Brown, supra,* 17 Cal.4th at p. 886.) "Although *Brady* disclosure issues may arise 'in advance of,' 'during,' or 'after trial' [citation], the test is always the same. [Citation.] *Brady* materiality is a 'constitutional standard' required to ensure that nondisclosure will not 'result in the denial of defendant's [due process] right to a fair trial.' [Citation.]" (*Brandon, supra,* at p. 8.) *Brady,* however, does not require the disclosure of information that is of mere speculative value. "[T]he prosecution has no general duty to seek out, obtain, and disclose all evidence that might be beneficial to the defense." (*In re Littlefield* (1993) 5 Cal.4th 122, 135 [19 Cal.Rptr.2d 248, 851 P.2d 42], italics omitted; *Kyles v. Whitley, supra,* 514 U.S. at pp. 436–437; *People v. Jordan, supra,* 108 Cal.App.4th at p. 361.) *Brady* did not create a general constitutional right to discovery in a criminal case. (*People v. Jordan, supra,* 108 Cal.App.4th at p. 361.)

b. *Pitchess disclosures.*

"For approximately a quarter-century our trial courts have entertained what have become known as *Pitchess* motions, screening law enforcement personnel files in camera for evidence that may be relevant to a criminal defendant's defense." (*People v. Mooc* (2001) 26 Cal.4th 1216, 1225 [114 Cal.Rptr.2d 482, 36 P.3d 21], fn. omitted.) In 1978, the Legislature codified the *Pitchess* privileges and procedures, and they are now embodied in sections 832.5, 832.7 and 832.8, and Evidence Code sections 1043 through 1047. (*People v. Mooc, supra,* 26 Cal.4th at p. 1226; *Alford v. Superior Court, supra,* 29 Cal.4th at p. 1037; *Brandon, supra,* 29 Cal.4th at pp. 8–9.) This statutory scheme provides that peace officer personnel records are confidential and may be discovered only pursuant to the procedures set forth in the Evidence Code. (*Alford, supra,* at pp. 1037–1038; *Brandon, supra,* at p. 9.) Evidence Code sections 1043 and 1045 establish a two-step procedure for a criminal defendant's discovery of peace officer records. (*California Highway Patrol v.*

*Superior Court* (2000) 84 Cal.App.4th 1010, 1019 [101 Cal.Rptr.2d 379].) First, pursuant to Evidence Code section 1043, the defendant must file a written motion for discovery, including a description of the type of information sought, and supported by affidavits showing, among other things, good cause for the discovery and setting forth the materiality of the requested information to the subject matter of the pending litigation. (*People v. Mooc, supra,* 26 Cal.4th at p. 1226; *California Highway Patrol, supra,* 84 Cal.App.4th at p. 1019.) The threshold for discovery embodied in Evidence Code section 1043 is "relatively low." (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 83 [260 Cal.Rptr. 520, 776 P.2d 222] (*City of Santa Cruz*); *Brandon, supra,* 29 Cal.4th at p. 10.) The accused " 'may compel discovery by demonstrating that the requested information will facilitate the ascertainment of the facts and a fair trial.' [Citation.] In contrast to the detailed showing required by some civil discovery statutes [citations], the requisite showing in a criminal matter 'may be satisfied by general allegations which establish some cause for discovery' other than a mere desire for all information in the possession of the prosecution." (*City of Santa Cruz, supra,* 49 Cal.3d at pp. 84–85; *Brandon, supra,* 29 Cal.4th at p. 14.)

· ▋ If a defendant shows good cause, the trial court examines the relevant materials in camera to determine whether disclosure should be made. (Evid. Code, § 1045, subd. (b); *People v. Mooc, supra,* 26 Cal.4th at p. 1226; *City of Santa Cruz, supra,* 49 Cal.3d at p. 83.) The "relatively relaxed" standards for a showing of good cause under Evidence Code section 1043, subdivision (b), i.e., "materiality" to the subject matter of the pending litigation and a "reasonable belief" that the agency has the type of information sought, ensure that all potentially relevant documents will be produced for inspection. Evidence Code section 1045's in camera review procedure and disclosure guidelines, on the other hand, balance the officer's privacy interests against the defendant's need for disclosure. (*Alford v. Superior Court, supra,* 29 Cal.4th at p. 1039.)

> c. *The statutory Pitchess procedure does not unconstitutionally infringe upon Gutierrez's due process rights.*

Gutierrez must meet a heavy burden to prevail upon his claim that the statutory *Pitchess* procedures are unconstitutional. (*Brandon, supra,* 29 Cal.4th at p. 10.) " 'The courts will presume a statute is constitutional unless its unconstitutionality clearly, positively, and unmistakably appears; all presumptions and intendments favor its validity.' [Citations.]" (*Id.* at pp. 10–11.)

▋ Contrary to Gutierrez's assertion, the *Pitchess* scheme does not unconstitutionally trump a defendant's right to exculpatory evidence as delineated in *Brady.* Instead, the two schemes operate in tandem. "*Pitchess* . . .

and its statutory progeny are based on the premise that evidence contained in a law enforcement officer's personnel file may be relevant to an accused's criminal defense and that to withhold such relevant evidence from the defendant would violate the accused's due process right to a fair trial." (*People v. Mooc, supra,* 26 Cal.4th at p. 1227.) *Brandon* rejected a claim that Evidence Code section 1045's five-year limitation on discovery was contrary to *Brady* and violated a defendant's right to due process. (*Brandon, supra,* 29 Cal.4th at pp. 11–12.) *Brandon* explained that the " ' "*Pitchess* process" operates in parallel with *Brady* and does not prohibit the disclosure of *Brady* information.' " (*Brandon, supra,* at p. 14; see also *People v. Mooc, supra,* 26 Cal.4th at p. 1225 [*Pitchess* procedural mechanism "must be viewed against the larger background of the prosecution's constitutional obligation to disclose to a defendant material exculpatory evidence so as not to infringe the defendant's right to a fair trial"].)

 In other words, the statutory *Pitchess* procedures implement *Brady* rather than undercut it, because a defendant who cannot meet the less stringent *Pitchess* standard cannot establish *Brady* materiality. "Our state statutory scheme allowing defense discovery of certain officer personnel records creates both a broader and lower threshold for disclosure than does the high court's decision in *Brady, supra,* 373 U.S. 83. Unlike *Brady,* California's *Pitchess* discovery scheme entitles a defendant to information that will 'facilitate the ascertainment of the facts' at trial [citation], that is, 'all information pertinent to the defense' [citation]." (*Brandon, supra,* 29 Cal.4th at p. 14.) To obtain disclosure "[u]nder *Pitchess*, a defendant need only show that the information sought is material 'to the subject matter involved in the pending litigation.' [Citation.] *Because Brady's constitutional materiality standard is narrower than the Pitchess requirements, any citizen complaint that meets Brady's test of materiality necessarily meets the relevance standard for disclosure under Pitchess.* [Citation.]" (*Brandon, supra,* at p. 10, italics added.) Thus, if a defendant meets the good cause requirement for *Pitchess* discovery, any *Brady* material in an officer's file will necessarily be included. Stated conversely, if a defendant cannot meet the less stringent *Pitchess* materiality standard, he or she cannot meet the more taxing *Brady* materiality requirement. Therefore, Gutierrez's premise, that "*Brady* dictates more generous discovery than *Pitchess,*" is flawed in respect to the issue presented here.[6]

 Gutierrez's assertion that the prosecutor was obliged to conduct a review of the files of "all significant police officer witnesses" and disclose

---

[6] *Brady* discovery is broader than *Pitchess* discovery, of course, in the sense that the statutory *Pitchess* scheme applies only to peace and custodial officer records, whereas *Brady*'s mandates apply to all exculpatory or impeaching evidence, whether or not related to the conduct or records of officers.

any *Brady* material likewise fails. The *Pitchess* procedure is the only avenue by which citizen complaints may be discovered. (*People v. Jordan, supra,* 108 Cal.App.4th at p. 360.) *Alford* held that a prosecutor is not entitled to the fruits of a successful *Pitchess* motion made by the defense. (*Alford, supra,* 29 Cal.4th at p. 1046.) While the prosecution is free to seek such information by bringing its own *Pitchess* motion in compliance with the procedures set forth in Evidence Code sections 1043 and 1045, "[a]bsent such compliance . . . *peace officer personnel records retain their confidentially vis-a-vis the prosecution.*" (*Alford, supra,* 29 Cal.4th at p. 1046, italics added.) Given *Alford*'s limitation on disclosure to prosecutors, the *Brady* review suggested by Gutierrez is not tenable. As we recently explained in *People v. Jordan, supra,* 108 Cal.App.4th at page 358, a "prosecutor's duty under *Brady* to disclose material exculpatory evidence applies to evidence the prosecutor, or the prosecution team, *knowingly possesses or has the right to possess*" that is "actually or constructively in its possession or accessible to it." (Italics added.) Because under *Alford* the prosecutor does not generally have the right to possess and does not have access to confidential peace officer files, Gutierrez's argument for routine review of the complete files of all police officer witnesses in a criminal proceeding necessarily fails.

█ Gutierrez's further argument that the statutory *Pitchess* scheme offends constitutional due process by requiring that a defendant establish good cause for the disclosure of evidence the prosecution is already "under a pre-existing obligation to provide," is likewise unavailing. First, as we have explained, *Alford*'s holding obviously prohibits a prosecutor from routinely reviewing peace officer personnel files, and therefore implicitly suggests that imposition of the *Pitchess* good cause requirement is constitutional.

█ Second, a demonstration of materiality is a valid prerequisite to the disclosure of evidence in conditionally privileged state agency files, such as the peace officer records at issue here. In *Pennsylvania v. Ritchie* (1987) 480 U.S. 39 [94 L.Ed.2d 40, 107 S.Ct. 989] (*Ritchie*), the defendant was charged with molesting his 13-year-old daughter. He sought disclosure of reports compiled by the state protective services agency that had investigated the charges. Because the records were conditionally privileged under Pennsylvania law, the agency refused to disclose them. The Supreme Court held that the defendant's right to discover exculpatory evidence did not "include the unsupervised authority to search through" the state's files. (*Id.* at p. 59.) Both the defendant's and the state's interest could be protected by requiring that the files be submitted to the trial court for an in camera review, in which the court could ascertain whether the records contained *Brady* material, i.e., evidence that probably would have changed the outcome of his trial. (*Ritchie, supra,* at pp. 57–61.) Most significant here, the Court further clarified: "[The defendant], of course, may not require the trial court to search through the [agency]

file without first establishing a basis for his claim that it contains material evidence." (*Id.* at p. 58, fn. 15; *Brandon, supra,* 29 Cal.4th at pp. 14–15 [citing *Ritchie*].)

██ The material at issue here is conditionally privileged under California law. The *Pitchess* statutory scheme " 'carefully balances two directly conflicting interests: the peace officer's just claim to confidentiality, and the criminal defendant's equally compelling interest in all information pertinent to his defense.' " (*Alford, supra,* 29 Cal.4th at p. 1039, quoting *City of Santa Cruz, supra,* 49 Cal.3d at pp. 81–84.) Therefore, *Brady* is not violated by requiring disclosure only after an in camera review conditioned upon a showing of materiality. (*Brandon, supra,* at p. 15.) Accordingly, we discern no constitutional infirmity in the statutory *Pitchess* procedures.

B.–F.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Klein, P. J., and Croskey, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 28, 2004. George, C. J., did not participate therein.

---

[*]See footnote, *ante*, page 1463.