Filed 3/23/15  P. v. Gambino CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C073723 |
| v. | (Super. Ct. No. S12CRF0175) |
| FRANCISCO JAVIER ARRIOJA GABINO, | |
| Defendant and Appellant. | |

An information accused defendant Francisco Javier Arrioja Gabino of assault with intent to commit a specified sex crime (Pen. Code, § 220, subd. (a)(1);[1] count 1) and assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4); count 2).  The information specially alleged defendant personally inflicted great bodily injury in the commission of count 2.  (§ 12022.7, subd. (a).)

A jury found defendant (1) not guilty of count 1 and (2) guilty of count 2 but found the special allegation not true.  The abstract of judgment indicates defendant

---

[1]     Undesignated statutory references are to the Penal Code.

was sentenced to serve the middle term of three years in county jail pursuant to section 1170, subdivision (h), and was ordered to pay a $240 parole revocation restitution fine.

Defendant contends (1) this court must conduct an independent review of the trial court's hearing on the prosecutor's *Brady/Pitchess* motion,[2] and (2) the abstract of judgment must be corrected by striking the $240 parole revocation restitution fine imposed pursuant to section 1202.45. The People concede both contentions. Having conducted the requisite review, we conclude there was no abuse of discretion. We agree with the parties that the fine must be stricken. In addition, the amended abstract of judgment must be corrected to indicate in part 1 that the "Year Crime Committed" was 2011, and in part 4 that defendant was sentenced to county jail pursuant to section 1170, subdivision (h). We affirm the judgment and direct the trial court to correct the amended abstract of judgment.

FACTS

On July 14, 2011, Brittney M. went to a South Lake Tahoe casino with a group of women for a bachelorette party. Between 8:00 p.m. and 2:00 a.m., she drank five or six beers and felt slightly intoxicated.

At some point during the evening Brittney became separated from the rest of the group. She left the casino and walked down the street looking for a taxicab or a telephone to contact one. While she was walking, she saw a person cross from the other side of the street and saw someone, perhaps the same person, approaching her from behind on the left.

The person mumbled something in Spanish and started walking beside Brittney. The only passage Brittney understood was the words, "no sex." Brittney responded, "No.

---

[2]    *Brady v. Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215] (*Brady*); *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

I'm okay. You can leave. I don't know who you are. I'm okay. I'm just going over here. I'm going to make a phone call."

The person grabbed Brittney's hand. Brittney turned toward him, pointed, and said, "No. I'm just going right here. I'm okay. I'm okay." The next thing Brittney remembered was being on the ground with the person on top of her.

Brittney screamed, "No. Help. No." The man put his hands around Brittney's head and banged or smacked it against the ground three or four times. Then he punched her nose and mouth several times. The man moved his hand down toward Brittney's stomach and tried to lift up her shirt. Brittney screamed, "Absolutely not," drew up her left knee, pulled her arms together in the shape of a ball, and rolled to her right. The man got up and ran.

Brittney got up and ran to a restaurant parking lot. She raised her hand and a car on the street pulled over. The driver told Brittney she looked really bad and advised her to go inside the restaurant. Brittney complied and a restaurant employee called the police. Police and paramedics arrived shortly thereafter.

As a result of the incident, Brittney had a cut on the back of her head that required one staple to close. She also had a swollen nose, bruising on her face, broken fingernails, an abrasion to her left knee, and injuries to her left shoulder.

South Lake Tahoe Police Officer Shannon Norrgard arrived at the restaurant and obtained a general description of the person who had attacked Brittney. Then Officer Norrgard went to look for a suspect and found defendant walking on a local street. He had blood on his clothes and hands, and claimed the blood was his own. He denied he had been in a fight or encountered a woman.

Officers brought Brittney to defendant's location but she could not identify him. She could tell officers only that her attacker was of Mexican descent and was five feet six inches to five feet eight inches tall.

South Lake Tahoe Police Officer Scott Crivelli took samples of the blood on defendant's hands and clothes. Officer Crivelli placed the sample swabs in containers brought to the scene by South Lake Tahoe Police Officer John Spaeth, who then booked the containers into evidence. Officer Spaeth testified he did not put the individual containers in an evidence envelope before placing them in an evidence locker.

A criminalist at the California Department of Justice Crime Laboratory testified she received three containers sealed inside a manila evidence envelope. Two of the containers were sealed but the third was not; the criminalist tested only the sealed containers. DNA typing of a sample swab revealed a match to Brittney's genetic profile.

## DISCUSSION

## I

### *The Prosecutor's Brady/Pitchess Motion*

Defendant requests that this court independently review the sealed record of the trial court's in camera consideration of the prosecutor's *Brady*/*Pitchess* motion for discovery of information regarding Officer Spaeth to determine whether the trial court abused its discretion. The People agree this court may conduct such a review.

### *Background*

We provide a brief overview of the in camera proceeding while maintaining the confidential status of the examined materials.

On the first day of trial, the prosecutor learned the South Lake Tahoe Police Department had placed Officer Spaeth on administrative leave. Officer Spaeth informed the prosecutor his department had issued a notice to terminate him based on alleged misconduct. The prosecutor filed a *Brady*/*Pitchess* motion seeking disclosure of information from Officer Spaeth's personnel file concerning incidents of dishonesty and conduct demonstrating moral turpitude relevant to the officer's credibility as a witness.

On March 12, 3013, the trial court met in chambers with counsel for the City of South Lake Tahoe and South Lake Tahoe Police Chief Brian Uhler. After noting the

4

*Brady*/*Pitchess* motion had sought Officer Spaeth's personnel record, Chief Uhler explained the matters Officer Spaeth had discussed with the prosecutor were the subject of a pending internal affairs investigation and thus were not a part of the personnel file. Only a sustained disciplinary action would become a part of the personnel file.

The trial court then reviewed a binder entitled South Lake Tahoe Police Department Internal Affairs Investigation 12-002. The investigation had arisen from a citizen's complaint against Officer Spaeth related to a traffic citation. As it examined the binder, the court identified on the record the various documents it was reviewing. The review included police records of the traffic stop and citation as well as records of the administrative inquiry.

The internal affairs binder included records from a separate driving under the influence incident and a complaint from a third individual. The trial court reviewed transcripts of witness interviews, legal materials furnished to peace officers regarding investigative detentions, a chain-of-custody log for the patrol car video recording of the traffic stop, a police officer's formal report following her investigation of this matter, and other materials.

Following the review of the internal affairs investigation, the trial court examined Officer Spaeth's personnel file. Chief Uhler explained the personnel file does not include the police department's background investigation of Officer Spaeth or information on Officer Spaeth's training.

The trial court noted the personnel file contained correspondence from a lieutenant related to Officer Spaeth's administrative leave, seven documents related to pay or pay increases, letters of "Contingent Employment," a document regarding employee beneficiaries, and communications from the city's risk management department related to a chargeable traffic collision. The court next noted there was information related to changes of address, seniority status, oath of office documents, and assorted personal information.

5

In a separate section, the personnel file contained five separate performance evaluations.

In the last section, the personnel file contained a notice of intent to terminate employment and a written reprimand related to the chargeable collision.

After reviewing the files, the trial court stated it had seen nothing that would be subject to disclosure based on *Pitchess*. The court said that, pursuant to *Brady*, it would describe on the record the nature of the events and indicate the investigation of the matter was not complete.

Following the chambers session, and out of the jury's presence, the trial court explained to defendant and his counsel that, because the personnel investigation and process was ongoing and not complete, there was nothing in the personnel file the court could lawfully disclose under *Pitchess*. The court stated that, under *Brady*, the court was disclosing the general nature of the information but nothing specific could be disclosed.

The trial court then explained to defendant that a citizen had contacted the South Lake Tahoe Police Department to make a complaint of use of excessive force and lack of probable cause to make a traffic stop and issue a citation. Review of the patrol car video did not appear to verify Officer Spaeth's rationale for the traffic stop with the possible exception of making a turn too wide.

The trial court stated that, when the traffic stop was made, an exchange occurred between Officer Spaeth and the car's driver and passengers. The driver was vociferous in his claim there was no reason for the stop. Officer Spaeth gave the driver some documentation. Apparently Officer Spaeth later regretted doing so and tried to retrieve what he had given. An exchange occurred that gave rise to the internal affairs investigation.

The trial court stated the decision to terminate Officer Spaeth's employment was based primarily on this incident. In addition, Officer Spaeth had contacts with two other citizens who subsequently claimed there was not probable cause to stop them.

6

The trial court expressed its belief that its general description of Officer Spaeth's conduct was *Brady* material because "it related to the officer's character for honesty, veracity, and that sort of thing." The court stated it would allow some limited inquiry of Officer Spaeth should he be called as a witness. But the court would not allow exploration of the particular matters that remained under investigation.

The trial court found the relevance and materiality of the information in the confidential files was "fairly limited." The evidence affected the weight to be given to Officer Spaeth's testimony but not its admissibility.

Following the ruling, Officer Spaeth was called as a prosecution witness. He acknowledged the Lake Tahoe Police Department had "accused [him] of making a traffic stop that [he] should not have made" and of "issuing a . . . traffic citation to a motorist that [he] should not have issued" because, "in the department's perspective, that citation was not supported by the facts," and as a consequence "they've begun the process of actually terminating [his] employment."

Officer Spaeth testified he assisted Officer Crivelli in taking blood swabs from defendant. Officer Spaeth labeled the cartons with the case number and identifying information. Then he packaged and sealed the samples and transported them to an evidence locker.

### *Analysis*

"Under *Brady, supra*, 373 U.S. at page 87, a prosecutor must disclose any evidence that is favorable to the defendant and material on the issue of guilt or punishment. [Citations.]" (*People v. Gutierrez* (2003) 112 Cal.App.4th 1463, 1471 (*Gutierrez*).)

Under *Pitchess*, the "accused ' "may compel discovery by demonstrating that the requested information will facilitate the ascertainment of the facts and a fair trial." [Citation.] [T]he requisite showing in a criminal matter "may be satisfied by general allegations which establish some cause for discovery" other than a mere desire for all

7

information in the possession of the prosecution.' [Citations.]" (*Gutierrez, supra,* 112 Cal.App.4th at p. 1473.)

"*Pitchess, supra*, 11 Cal.3d 531, and its statutory progeny are based on the premise that evidence contained in a law enforcement officer's personnel file may be relevant to an accused's criminal defense and that to withhold such relevant evidence from the defendant would violate the accused's due process right to a fair trial." (*People v. Mooc* (2001) 26 Cal.4th 1216, 1227 (*Mooc*).)

When conducting the in camera hearing, "[t]he trial court should . . . make a record of what documents it examined before ruling on the *Pitchess* motion. . . . If the documents produced by the custodian are not voluminous, the court can photocopy them and place them in a confidential file. Alternatively, the court can prepare a list of the documents it considered, or simply state for the record what documents it examined. Without some record of the documents examined by the trial court, a party's ability to obtain appellate review of the trial court's decision, whether to disclose or not to disclose, would be nonexistent. Of course, to protect the officer's privacy, the examination of documents and questioning of the custodian should be done in camera in accordance with the requirements of Evidence Code section 915, and the transcript of the in camera hearing and all copies of the documents should be sealed." (*Mooc, supra,* 26 Cal.4th at p. 1229, fn. omitted.)

When a defendant does not "meet the less stringent *Pitchess* materiality standard, he [or she] cannot meet the more taxing *Brady* materiality requirement." (*Gutierrez, supra,* 112 Cal.App.4th at p. 1474.)

The trial court's ruling is reviewed for abuse of discretion. (*Mooc, supra*, 26 Cal.4th at p. 1228.)

In this case, the trial court stated for the record what documents it had examined in camera from the internal affairs investigation and the officer's personnel file. The court released the general outline of the charges brought against Officer Spaeth, finding such

8

disclosure was compelled under *Brady,* but the court declined to release specific details of the charges.

At defendant's request, we have reviewed the sealed transcript of the in camera proceedings. Defendant argues that, "[f]rom the available record, it appears the court may have found discoverable items in Officer Spaeth's personnel file but, after hearing argument from both defense counsel and the prosecution, did not disclose those items to defense counsel."

Our examination of the sealed materials does not reveal any materials that would shed light upon the factual discrepancy highlighted in defendant's briefing between Officer Spaeth's testimony that he did not put the three swab cartons into an evidence envelope and the criminalist's testimony that the cartons were sealed in such an envelope at the outset of her examination.

In sum, defendant has not met the "less stringent" *Pitchess* materiality standard and thus has not met "the more taxing *Brady* materiality requirement." (*Gutierrez, supra,* 112 Cal.App.4th at p. 1474.)

## II

### *Correction of Abstract of Judgment*

Defendant contends, and the People concede, the abstract of judgment must be corrected to strike the reference to a parole revocation restitution fine. (Former § 1202.45; Stats. 2007, ch. 302, § 15; now § 1202.45, subd. (a), Stats. 2012, ch. 762, § 1.) We accept the People's concession.

### *Background*

After sentencing defendant to county jail for three years pursuant to section 1170, subdivision (h), the trial court stated: "The Defendant is to pay a restitution fine of $240 pursuant to . . . section 1202.4. [¶] He's to pay a $240 -- actually, strike that. [¶] He's to pay a $40 court security fee, a $30 court operations assessment fee."

9

The original abstract of judgment filed May 1, 2013, and the amended abstract of judgment filed October 1, 2013, both reflect a $240 restitution fine suspended unless parole is revoked.

### *Analysis*

The record suggests the trial court started to impose a parole revocation restitution fine but corrected itself, stating, "actually, strike that."

In any event, defendant is not subject to a period of parole following his release from commitment under section 1170, subdivision (h). (*People v. Cruz* (2012) 207 Cal.App.4th 664, 672, fn. 6.) Thus, he is not subject to a fine pursuant to section 1202.45, subdivision (a).

Effective January 1, 2013, section 1202.45, subdivision (b), addresses persons (such as defendant) who are sentenced pursuant to section 1170, subdivision (h). However, that provision does not apply retroactively to defendant's 2011 offense. (*People v. Souza* (2012) 54 Cal.4th 90, 143.) Thus, the trial court did not err when it refrained from imposing a parole revocation restitution fine. We direct the trial court to correct the amended abstract of judgment by striking this fine.

The trial court is further directed to correct the amended abstract of judgment to indicate in part 1 that the crime was committed in 2011 and in part 4 that sentence was imposed pursuant to section 1170, subdivision (h). Neither the original abstract of judgment nor the amended abstract of judgment so indicates.

### DISPOSITION

The judgment is affirmed. The trial court is directed to correct the amended abstract of judgment to indicate the crime was committed in 2011 and sentence was imposed pursuant to Penal Code section 1170, subdivision (h), and to omit any reference to a parole revocation restitution fine. The trial court shall forward a certified copy of the corrected abstract to El Dorado County jail, to be forwarded, as necessary, to the relevant authorities.

10

       HOCH     , J.

We concur:


      BLEASE     , Acting P. J.


    NICHOLSON   , J.