Filed 9/8/16  P. v. Luevano CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RICHARD THOMAS LUEVANO,<br><br>Defendant and Appellant. | F071400<br><br>(Super. Ct. No. BF155905A)<br><br>**OPINION** |

### THE COURT\*

APPEAL from a judgment of the Superior Court of Kern County.  Gary T. Friedman, Judge.

Siri Shetty, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Michael A. Canzoneri, Deputy Attorney General, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Levy, Acting P.J., Poochigian, J. and Franson, J.

A jury convicted appellant Richard Thomas Luevano of unlawful possession of a firearm (count 1/Pen. Code, § 29800, subd. (a)(1)),[1] carrying a loaded firearm (count 2/ § 25850, subd. (c)(6)), and misdemeanor resisting arrest (count 3/§ 148, subd. (a)). In a separate proceeding, the court found true four prior prison term enhancements (§ 667.5, subd. (b)), and allegations that Luevano had a prior conviction within the meaning of the three strikes law (§ 667, subds. (b)-(i)).

On April 8, 2015, the court sentenced Luevano to an aggregate term of eight years; a doubled, aggravated term of six years; and two one-year prior prison term enhancements.

On appeal, Luevano contends the court committed *Brady*[2] error. We affirm.

## FACTS

### *The Trial*

On July 6, 2014, at approximately 10:06 p.m., Bakersfield Police Officers Keegan Gavin and Chad Garrett were on patrol traveling eastbound on Water Street. As they approached a house located at 700 Water Street[3] (the 700 house), Officer Garrett used a spotlight to illuminate Luevano, Leonardo Fernandez, and Dayana Estrada, who were standing in front of the house. When Luevano turned to face the officers, Officer Garrett recognized him as someone who had numerous outstanding felony warrants. Luevano ran into the house through the front door and Officer Gavin ran north along Baker Street and stopped by a chain-link fence bordering the house to set up a perimeter. Officer Gavin saw Luevano run out of the house through a door that faced west with his right hand under his shirt at his waistband. Gavin yelled out several times identifying himself

---

**1**    All further statutory references are to the Penal Code.

**2**    *Brady v. Maryland* (1963) 373 U.S. 83.

**3**    The house faced south and was located on the northeast corner of Water Street and North Baker Street.

as a police officer and ordering Luevano to stop but Luevano ran north and then east along the back (north side) of the house with his hand at his waistband.  Luevano then jumped over a chain link fence into the backyard of the house located at 706 Water Street (the 706 house).

Meanwhile, Officer Garrett ran to the east side of the front yard of the 700 house to set up a perimeter and heard noises coming from the backyard that sounded like someone was climbing a chain-link fence.  A short time later, Garrett saw Luevano running south in the side yard of the 706 house, along the fence that separated the two houses, toward the front yard.  Luevano climbed over a small fence that separated the front yard of the 706 house from its backyard and then began climbing over the fence that separated the two houses.  Officer Garrett ran toward the 706 house and as he entered its front yard, Luevano got off that fence and ran toward the small fence he had just climbed over.  During the time Officer Garrett observed him, Luevano had his right hand tucked in his waistband.  As he ran north toward the small fence, Garrett saw Luevano use his right hand to manipulate an item in his waistband.  When Luevano was close to the small fence, Garrett saw Luevano's hand drop down and he heard a thud that sounded like Luevano dropped something.  Luevano then climbed over the small fence and ran to the backyard of the 706 house.

Officer Garrett ran to the east side of the front yard of the 706 house in order to extend the perimeter.  He soon saw Luevano climb over the fence from the sideyard of the 706 house into the front yard of the 700 house.  Officer Garrett ran over to Luevano and detained him.  Afterwards, Officer Gavin found a .45‑caliber semiautomatic handgun in the front yard of the 706 house where Officer Garrett had seen Luevano appear to drop something.  Gavin checked the handgun and found it was loaded.

*The Alleged Brady Violation*

On March 10, 2015, defense counsel filed a motion for a new trial challenging only the sufficiency of evidence to support Luevano's two convictions involving firearms.

On the morning of April 8, 2015, at Luevano's sentencing hearing, the court denied the motion. Afterwards, defense counsel advised the court that something had recently come to his attention. Defense counsel then explained that members of Luevano's family had done some research and discovered a civil case in which Officer Garrett was being sued in his capacity as an officer. The case, however, had not been filed correctly and the plaintiff had been granted leave to amend the pleadings. Defense counsel conceded he did not know the underlying facts of that case.

Defense counsel also told the court that he subsequently learned Officer Garrett was involved in a second matter that defense counsel had very limited information on except that he had been told it involved a woman. Defense counsel acknowledged having told the court he would be ready for sentencing that day and stated that he came across the information late.

When the court asked defense counsel when he learned of this information, defense counsel replied that he found out about one matter the day before and the other one seven to 10 days earlier. The court responded that it had asked its clerk to find out if defense counsel was ready to proceed in the instant matter and the previous day the court had been told that he was. However, after the court spent two and a half hours preparing for the hearing and had ruled on the motion for a new trial, defense counsel was bringing up another matter.

Defense counsel replied that he received information about 10 days ago that did not lead to much, that required more investigation, and that he did not think would be fruitful. However, the previous day after telling the court he would be ready the next day

4

for sentencing, defense counsel learned there was a second matter that he did not yet know anything about because he had not been provided information he had been promised. Defense counsel then stated that he just wanted to make certain there was a record of the second matter he spoke about in case there was an appeal and that he left it up to the court whether it would allow him more time to investigate it.

The prosecutor objected to a continuance noting that the sentencing had been continued three times for the defense and they did not even know what the civil case against the officer was about. After further discussion, defense counsel asked the court to continue the sentencing three weeks.

The court continued the matter to that afternoon in order to allow it to do some research. When the matter resumed, the court asked defense counsel if he had any papers to file or any other specific information other than what he mentioned that morning. Defense counsel replied he did not have any papers to file. He also stated that the only other information he was aware of was that a lawsuit had been filed against Officer Garrett in Kern County Superior Court, that according to a docket entry, the first motion in that case was filed on February 11, 2013, the motion was for a "continuance" to allow the plaintiff to clean up the petition, and that the plaintiff was in pro per. When asked if there was a second claim against the officer, defense counsel stated he believed there was a second accusation against him but he did not have any documentation to confirm that claim.

After hearing from the prosecutor, the court found defense counsel had not established good cause and denied his motion for a continuance. The court then considered and denied Luevano's motion to dismiss his prior strike conviction before it sentenced him to an aggregate eight-year term, the aggravated term of three years on Luevano's felon in possession of a firearm conviction, doubled to six years because of Luevano's strike conviction, two 1-year prior prison term enhancements, a stayed term on

5

his carrying a loaded firearm conviction, and a concurrent six-month term on his resisting arrest conviction.

At no time during either hearing that day did defense counsel object to the proceedings on *Brady* grounds or in any manner raise a *Brady* issue.

## DISCUSSION

Luevano contends the evidence of the alleged civil lawsuit filed against Officer Garrett was favorable to him because it tended to impeach the officer's credibility. He further contends that because the officer must have been aware of the lawsuit his knowledge can be imputed to the prosecutor. Thus, according to Luevano, the prosecution's failure to provide the defense information on the lawsuit implicated Luevano's due process rights under *Brady* and requires reversal of the judgment or, alternatively, remand for an evidentiary hearing on the claim. We disagree.

Luevano was aware of the civil suit seven to 10 days prior to April 8, 2015, when the court denied his motion for a new trial. However, he never attempted to add a *Brady* claim to his pending motion for a new trial or otherwise bring the alleged error to the court's attention. Nor did he raise a *Brady* claim when he argued for a continuance in order to investigate the basis of the civil suit. Thus, Luevano forfeited his claim of *Brady* error by failing to raise it in the trial court. (Cf. *People v. Carpenter* (1997) 15 Cal.4th 312, 411 [a *Brady* claim based on evidence that was known or available to counsel at trial is waived where counsel does not object below].)

In any case, even if this issue were properly before us we would reject it.

> "Under *Brady*, *supra*, 373 U.S. 83, and its progeny, the prosecution has a constitutional duty to disclose to the defense material exculpatory evidence, including potential impeaching evidence. The duty extends to evidence known to others acting on the prosecution's behalf, including the police. [Citations.] The duty to disclose 'exists even though there has been no request by the accused.' [Citations.] For *Brady* purposes, evidence is material if it is reasonably probable its disclosure would alter the outcome of trial.

6

" 'There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.' " (*People v. Superior Court* (*Johnson*) (2015) 61 Cal.4th 696, 709-710 (*Johnson*).)

" '[A] prosecutor had no constitutional duty to conduct [a] defendant's investigation for him. Because *Brady* and its progeny serve "to restrict the prosecution's ability to suppress evidence rather than to provide the accused a right to criminal discovery," the *Brady* rule does not displace the adversary system as the primary means by which truth is uncovered. [Citation.] Consequently, "when information is fully available to a defendant at the time of trial and his only reason for not obtaining and presenting the evidence to the Court is his lack of reasonable diligence, the defendant has no *Brady* claim." " (*Johnson*, *supra*, 61 Cal.4th at pp. 715-716.)

The civil suit against Officer Garrett was filed in 2013 and information about it was fully available to the defense at the time of trial and could easily have been discovered earlier by defense counsel if he had researched the Kern County Superior Court's public records. Further, since the only reason for not obtaining information about this suit was the defense's lack of diligence in checking the superior court's records, there was no *Brady* violation.

Moreover, as noted above, to establish *Brady* error the evidence at issue must be favorable to the accused, either because it is exculpatory or impeaching. Defense counsel's comments to the court established only that a civil suit had been filed against Officer Garrett and that because of technical irregularities it was dismissed with leave to amend. Since this information was neither exculpatory nor impeaching, the comments did not establish *Brady* error. (*People v. Gutierrez* (2003) 112 Cal.App.4th 1463, 1472 ["*Brady*[] … does not require the disclosure of information that is of mere speculative value"].) Nor do the comments establish that the defense was prejudiced by the information the prosecutor allegedly withheld. Accordingly, we reject Luevano's claim of *Brady* error.

## DISPOSITION

The judgment is affirmed.